# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PREMIER DEALER SERVICES, INC.,**

    **Plaintiff,**

v.

**ALLEGIANCE ADMINISTRATORS, LLC,** *et al.,*

    **Defendants.**

Case No. 2:18-cv-735
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion to Dismiss (ECF No. 10) filed by Defendants Dimension Service Corporation and Allegiance Administrators, LLC (collectively "Allegiance"), the Memorandum in Opposition and Motion for Leave to Amend (ECF No. 16) filed by Plaintiff Premier Dealer Services, Inc. ("Premier"), Allegiance's Reply Brief (ECF No. 37), Premier's Surreply (ECF No. 43), and Allegiance's Response to Premier's Surreply and Motion to Stay. (ECF No. 44.) For the reasons set forth below, the Court **GRANTS in PART** and **DENIES in PART** Allegiance's Motion to Dismiss, **GRANTS** Premier's Leave to Amend, and **DENIES** Allegiance's Motion to Stay.

## I. BACKGROUND

The facts relied upon in this decision were taken from the pleadings or documents that are properly considered part of the pleadings. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (documents are considered part of the pleadings if they are referenced in the complaint and are central to the plaintiff's claim).

In its First Amended Complaint (ECF No. 3), Premier alleges eight counts: (1) misappropriation of trade secrets, (2) copyright infringement, (3) conversion, (4) replevin, (5)

injunctive relief based on misappropriation of trade secrets, (6) injunctive relief based on copyright infringement, (7) tortious interference with contract and business relations, and (8) punitive damages. *See* Pl.'s First Amend. Compl. Counts four, five, six, and eight are remedies and so the Court need not address them. Additionally, Premier concedes that its claims for conversion and replevin are precluded by Ohio law, and so the Court dismisses those. *See* Pl.'s Memo. in Opp. to Mot. to Dismiss at 3. Premier's only remaining claims ripe for review are: count one (misappropriation of trade secrets), count two (copyright infringement), and count seven (tortious interference). For the reasons below, the Court **DISMISSES** Premier's tortious interference claim, and **GRANTS** Premier leave to amend its complaint as it relates to the trade secret misappropriation and copyright infringement claims.

## II. STANDARD OF REVIEW

In evaluating a complaint to determine whether it states a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe it in the light most favorable to the plaintiff and determine whether the factual allegations present any plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. Plausibility requires showing more than the "sheer possibility of relief but less than a probab[le] entitlement to relief." *Iqbal*, 556 U.S. at 678.

2

## III. MOTION TO DISMISS

Allegiance offers three reasons the Court should dismiss Premier's claims. First, Allegiance contends that Premier's Amended Complaint lacks the requisite factual support to establish that Premier's Rating Process is a trade secret. *See* Ohio Rev. Code § 1333.61. Second, Allegiance argues Ohio's Uniform Trade Secret Act ("OUTSA") preempts Premier's claims for tortious interference. *See* Ohio Rev. Code § 1333.67. Premier refutes this, however, and argues that section 1333.67 does not preempt the tortious interference claim since that claim is wholly separate from its trade secrets claim. *Id.* at 4. Third, Allegiance asserts that Premier's copyright infringement claims fail due to: (i) the absence of infringing activity in the United States; (ii) Premier's lack of any legal right to copyright protection for unoriginal boilerplate forms; and (iii) Premier's failure to satisfy the heightened pleading standard that applies to copyright infringement claims.

### A. Premier Has Sufficiently Established Its Trade Secret Misappropriation Claim Regarding the Rating Process.

To prevail on an OUTSA claim, a plaintiff must show "by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortgage Capital Corp.*, 258 Fed. Appx. 860, 861 (6th Cir. 2008). The OUTSA defines "trade secret" as:

> [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D). The Ohio Supreme Court has adopted the following six factors for consideration in determining whether a plaintiff has shown the existence of a trade secret:

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquires and duplicate the information.

*State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 687 N.E.2d 661, 672 (1997).

Determining "whether information constitutes a trade secret is a highly fact-specific inquiry." *Wellington Res. Grp. LLC v. Beck Energy Corp.*, No. 2:12-cv-104, 2013 WL 5325911, at *5 (S.D. Ohio Sept. 20, 2013). Still, "[c]onclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status." *Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456, at *7 (S.D. Ohio June 17, 2016) (quoting *Arnos v. MedCorp., Inc.*, 2010 WL 1730139, at *3 (Ohio Ct. App. Apr. 30, 2010)).

Allegiance maintains that Premier has failed to plead that the alleged trade secrets: (i) derive economic value, (ii) are distinguishable from publicly available industry practices, (iii) are reasonably protected from disclosure, and (iv) satisfy the test Ohio courts use to determine trade secret status. *See* Def.'s Mot. to Dismiss at 9–11.

The alleged trade secret information, as identified by Premier in its First Amended Complaint, includes: "numerous proprietary systems and information. One such system is … a confidential and proprietary rating process for Programs…. Premier's rating process enabled

4

Programs to be marketed at attractive pricing while ... accurately addressing costs and risks." *See* Pl.'s Amend. Compl. at ¶ 6. In its first count, Premier then maintains that, pursuant to a confidential agreement, it shared with Tricor "business and technical information, including without limitation its Rating Process." *Id.* at ¶ 19. Finally, Premier states that its "proprietary and confidential information constitute trade secrets," under the OUTSA. *Id.* at ¶ 22.

The Court finds that Premier's First Amended Complaint sufficiently pleads facts that establish that its Rating Process is a trade secret. Premier adequately claims that the Rating Process is a trade secret based on its use, development, secrecy, and security protections. The Court notes, however, that the Rating Process is the only trade secret that Premier has sufficiently pleaded in its First Amended Complaint, and so, Premier has failed to show that its other "numerous proprietary systems and information" are also trade secrets.

In conclusion, the Court **DENIES** Allegiance's Motion to Dismiss Premier's trade misappropriation claim.

### B. Ohio Revised Code § 1333.67 Precludes Premier's Tortious Interference Claim.

The OUTSA preempts "conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Ohio Rev. Code § 1333.67(A). "Other civil remedies that are not based on misappropriation of a trade secret" are not preempted by the OUTSA. *Id.* § 1333.67(B)(2).

The Sixth Circuit has explained that "[t]he test to determine whether a state law claim is displaced by OUTSA is to determine whether the claims are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claim for trade secret misappropriation." *Stolle Machinery Co., LLC v. RAM Precision Industries*, 605 Fed. Appx. 473, 485 (6th Cir. 2015) (quoting *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 989 (N.D. Ohio

5

2008) (internal quotations omitted)). But "[w]here the state-law claim has a factual basis independent from the facts establishing the OUTSA claim, the portion of the claim supported by an independent factual basis survives preemption." *Id.* (internal quotations omitted).

To recover on a claim of tortious interference with business relationships, a plaintiff must show: (1) the existence of a business relationship; (2) the wrongdoer's knowledge of the relationship; (3) the wrongdoer's intentional and material interference with the business relationship; (4) lack of justification; and (5) damages. *Stolle Machinery Co., LLC v. RAM Precision Indus.*, 605 Fed. Appx. at 485.

Allegiance argues Premier's tortious interference claim is based on the same set of operative facts and states the same claim for relief as Premier's trade secret claim. Allegiance also asserts that Premier fails to allege any additional or novel facts to support the tortious interference claim. In response, Premier contends its tortious interference claim is contained only in paragraphs 49–55 of its First Amended Complaint. While accurate, paragraph 49 "incorporates the preceding allegations of [the] Complaint as if rewritten verbatim herein." *See* Pl.'s First Am. Compl. at ¶ 49. By incorporating the Complaint's preceding paragraphs, Premier effectively incorporated the factual allegations contained in all prior paragraphs, but most importantly paragraphs 1 through 17.

Read as a whole, Premier's tortious interference claim alleges that Allegiance persuaded Tricor to breach the Agreement with the "objective of hijacking" Premier's proprietary information as a means to "step into Premier's shoes and profit from the relationship Premier cultivated over nearly two decades." *Id.* at ¶ 12. In other words, Premier claims that Allegiance stole Premier's trade secrets, and by doing so, interfered with Premier's business relationship. Therefore, the Court concludes that Premier's tortious interference claim essentially restates the

same operative facts that formed its trade secret misappropriation claim. *See Stolle Machinery Co.*, 605 Fed. Appx. at 485 (6th Cir. 2015) (dismissing Plaintiff's tortious interference claim because it was dependent on proof of the underlying act of misappropriation of trade secrets).

As a result, the OUTSA precludes Premier's tortious interference claim. For that reason, the Court **GRANTS** Allegiance's Motion to Dismiss Premier's tortious interference claim.

## C. Premier Has Failed to Adequately Plead a Copyright Infringement Claim

Finally, Allegiance argues that Premier's copyright infringement claim fails to state a claim for three reasons. First, Allegiance contends that the Court must dismiss Premier's copyright infringement claim fails because the copyrighted forms are unoriginal. *See* Def.'s Mot. to Dismiss at 13–16. Allegiance also argues that the Court must dismiss this claim since all the allegedly infringing activity took place in Canada, and because the Copyright Act does not apply to exclusively extraterritorial conduct. In response, Premier argues that its First Amended Complaint properly alleges that Allegiance is an Ohio entity that used the forms in Canada, and that Allegiance replicated Premier's valid copyrights. Third, Allegiance argues that Premier failed to satisfy the heightening pleading standard necessary for copyright infringement claims. Premier contends that no such heightened standard applies.

To establish a claim of copyright infringement, a plaintiff must show: (1) ownership of a valid copyright; and (2) that the defendant copied it. *Kohus v. Mariol*, 328 F.3d 848, 854 (6th Cir. 2003). Here, the fact that Allegiance copied Premier's copyrighted forms is not disputed. "Not all 'copying' is actionable, however: it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original*.'" *Kohus*, 328 F.3d at 853 (emphasis in original) (quoting *Feist Publication, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Premier has registered the forms with the

Copyright Office, which is an infringement suit prerequisite, *see* 17 U.S.C. § 411(a), and which constitutes prima facie evidence of the copyright's validity. *See id.* § 410(c); *see also Lexmark Intern., Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) ("The first prong tests the originality and non-functionality of the work, ... both of which are presumptively established by the copyright registration."). Therefore, by attaching its copyright registration for the forms, Premier shifted the burden to Allegiance to rebut the presumptive validity of Premier's copyright. *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

Allegiance argues that the copyrighted forms are unoriginal because they "are standard through the industry, contain information that is almost identical to contracts used by other companies throughout the industry, and lack the required originality." Def.'s Resp. to Pl.'s Mot. to Dismiss at 16. Additionally, Allegiance asserts that "[w]ithout specifically pleading what Premier claims to be copyrighted, and what specific parts of the form Allegiance allegedly copied without authorization, Premier cannot plead a copyright claim under the heightened standard required by law." *Id.* The Court disagrees.

As a preliminary matter, there is no heightened pleading standard for copyright claims. *See Productivity-Quality Sys., Inc. v. CyberMetrics Corp.*, No. 3:17-CV-369, 2018 WL 2009673, at *3–4 (S.D. Ohio Apr. 30, 2018) ("The reference in *National Business* [(which Allegiance cites)] to 'greater particularity in pleading' merely describes the plausibility standards rather than some higher pleading standard ...."). Further, whether Premier's copyrighted forms are standard through the industry is a factual claim, not resolvable on a 12(b)(6) motion. Instead, Allegiance directs the Court to Exhibit 1 of its Memorandum in Opposition, which compares the forms used by Allegiance and Premier section by section, and to Exhibits B and C of Premier's First

Amended Complaint, which include the forms used by Premier and Allegiance, respectively. By comparing the two forms, Allegiance does not offer proof of industry standard forms since Allegiance cannot reasonably rely solely on its own form as the industry standard. Therefore, at this stage, the Court concludes that Allegiance has failed to rebut the presumption that Premier's copyrighted forms are valid.

Although Premier has established the first element of its copyright claim, the Court must still determine whether the Copyright Act's scope covers the alleged infringing activity. On this issue, both parties correctly explain the Copyright Act's limited jurisdiction. That is, "if all the copying or infringement occurred outside the United States, the Copyright Act would not apply." *Liberty Toy Co. v. Fred Silber Co.*, 149 F.3d 1183, 1998 WL 385469, at *3 (6th Cir. 1998); *see Subafilms, Ltd. V. MGM-Pathe Communs. Co.*, 24 F.3d 1088 (9th Cir. 1994) (holding that allegations within the U.S. for alleged activities entirely abroad cannot state a claim for copyright infringement under the Copyright Act). Premier does not allege that Allegiance has engaged in any directly infringing activity. Instead, Premier alleges the infringing activity took place in Canada, and that Allegiance is headquartered in Ohio. Notably, Premier never claims that Allegiance engaged in any infringing activity in the United States. Therefore, in its First Amended Complaint, Premier failed to establish any nexus between the allegedly infringing activity in Canada and the United States.[1]

For those reasons, the Court **DISMISSES** Premier's copyright infringement claim. In its Response to Allegiance's Motion to Dismiss, Premier moved the Court for leave to amend, if the Court preliminarily dismissed Premier's claims. The Court now addresses that motion.

---

[1] In its Memorandum in Response, Allegiance states that "Defendants plausibly reproduced and prepared derivative works at their Ohio offices...." Pl.'s Resp. at 12. Had Premier included this allegation in its Complaint, Premier would have adequately plead a copyright infringement claim. But because Premier first mentioned this claim in its Response to Allegiance's Motion to Dismiss, the Court cannot consider the allegation as part of the pleadings.

## IV. LEAVE TO AMEND

Rule 15(a)(2) states that a leave to file an amended complaint should be freely allowed "when justice so requires." Most courts have interpreted this language to require allowing amendments unless one of the following justifies denial: (a) undue delay; (b) bad faith or dilatory motive by the moving party; (c) repeated failure to cure deficiencies by previous amendments; (d) undue prejudice to the opposing party; or (e) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Sixth Circuit has adopted this framework and explained that "a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

### 1. Trademark Infringement Claim

As discussed *supra*, the Court denied Allegiance's Motion to Dismiss Premier's trademark infringement claim but limited the scope of that claim to the Rating Process. In its Proposed Second Amended Complaint, Premier included allegations and information expanding upon the trade secrets that Allegiance allegedly misappropriated. The Court must now determine whether Premier may file its Proposed Second Amended Complaint as it relates to the scope of the trade secret misappropriation claim.

In its Proposed Second Amended Complaint, Premier alleges that Allegiance misappropriated four types of trade secrets—Reserves, Rates, Rating Process, and Rate Cards. Ex. A at ¶ 46. Premier explains the source and development of the Reserves and Rates by describing their components. For example, Premier states:

> Premier assembled possession of information about the repairs that were made to the vehicles of customers who bought service contracts in the United States. Those customers submitted claims; repair bills were generated and covered claims were paid. That paperwork contained raw, unprocessed data about thousands of customers (the "Raw Data"). The Raw Data was never in the public domain.

Ex. A at ¶¶ 4–5 of Pl.'s Surreply (ECF No. 43-1).

Premier then alleges that Allegiance misappropriated the "Rating Process," about which Premier writes:

> In 2006, Premier undertook a major effort to analyze historical loss data for its Vehicle Service Contracts in U.S. markets. Premier developed a methodology that analyzed many years of repair costs experienced relative to a host of variables, including without limitation make of vehicle, year of manufacture, odometer, nature, scope and duration of any manufacturer's warranty, the customer's chosen coverage level, and the customer's chosen coverage duration (the "Rating Process").

*Id.* at ¶ 6. Premier then claims that "[u]sing the Rating Process, Premier was able to make reliable predictions about how much money needed to be set aside for future repairs in any of the thousands of possible permutations of the variables (the "Reserves" or "Rates"). *Id.* at ¶ 7. "Reserves," Premier alleges, "are the proprietary component of the retail costs of a Service Contract, i.e., the portion of the amount paid by the customer that is set aside to be used to pay losses under the agreements." *Id.* at ¶ 7. Premier explains that the "Rate Chart" is Premier's "set of Reserves ... for every possible permutation" which can be presented on "a paper rate card" and which "was programmed in Premier's system." *Id.*[2]

Turning to whether the Court should grant Premier leave to amend, thereby expanding the scope of its trade secret misappropriation claim, the Court notes the complex nature and procedural posture of this case. At oral argument for Premier's Motion for Preliminary Injunction (which the Court later denied), the parties advanced sharply opposing positions. This case deals with international companies competing for complex contracts, which involve confidential algorithms and disputed terms. For that reason, and due to the nature of discovery in

---

[2] In its Proposed Second Amended Complaint, Premier states that "[t]his Rate Chart is the fruit of Premier's labor, its analysis, and shall be referred to collectively as 'Premier's Trade Secrets.'" Ex. A at ¶ 7 of Pl.'s Surreply. While the Court appreciates the classification for ease of reference, at this time the Court refuses to determine whether the information and analyses Premier references constitute trade secrets.

11

litigation, the Court understands that the materials facts have been hashed out over time. With that in mind, the Court concludes that "justice so requires" Premier leave to amend its complaint.

Therefore, the Court **GRANTS** Premier's Leave to Amend.

**2. Tortious Interference Claim**

The Court must determine whether the tortious interference claim in Premier's Proposed Second Amended Complaint is futile.

In its Proposed Second Amended Complaint, Premier largely repeats the same language regarding the tortious interference that it did in its First Amended Complaint. For example, Premier's Proposed Second Amended Complaint again states that Allegiance persuaded Tricor to breach its Agreement with Premier with the "objective of hijacking" Premier's proprietary information "to step into Premier's shoes and profit from the relationship Premier cultivated over nearly two decades." Pl.'s Proposed Second Amend. Compl. at ¶ 35. This repetition further illustrates the congruity between Premier's tortious interference and trade secret misappropriation claims—which, as discussed *supra*, was the basis for the Court dismissing Premier's tortious interference claim.

Premier adds in its Proposed Second Amended Complaint that "Defendants improperly and intentionally interfered with Premier's business relationships by various means, including inducing Tricor to breach the 12-month notice obligation in the 2014 Agreement." *Id.* at ¶ 91. The Court notes the conflict, however, between Premier's allegation that Allegiance "induced Tricor to breach the 12-month notice obligation" and Premier's admission that Premier ultimately terminated the 2014 Agreement with Tricor, thereby precluding any notice obligation on Tricor. *Id.* at ¶ 29.

Without more, Premier's tortious interference claim still arises out of the same operative facts as its misappropriation of trade secrets claim. Therefore, the Court concludes that Premier's tortious interference claim in its Proposed Second Amended Complaint is futile.

### 3. Copyright Infringement Claim

The Court must determine whether the copyright infringement claim in Premier's Proposed Second Amended Complaint is futile.

In the preceding section, the Court concluded that Premier's First Amended Complaint did not adequately state a copyright infringement claim upon which relief could be granted because Premier failed to plausibly allege any infringing activity in the United States. In its Proposed Second Amended Complaint, however, Premier claims that "Allegiance has no physical presence in Tricor's market in Canada. All acts take by Allegiance were carried out by its employees in and about Dublin, Ohio." Pl.'s Surreply at ¶ 36. By adding those factual allegations to its proposed pleadings, Premier adequately established a nexus between Allegiance's business activities in the United States and the alleged infringing activity in Canada. As a result, Premier cured its previously insufficient copyright infringement claim with its Proposed Second Amended Complaint. Therefore, the Court **GRANTS** Premier's Motion for Leave to Amend.

### V. MOTION TO STAY

Allegiance moves to stay this case, pending the outcome of the Canadian litigation between Premier and Tricor. Def.'s Resp. at 8–9 (ECF No. 44).

A district court's discretion to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.

Ct. 163, 81 L. Ed. 153 (1936). The moving party has the burden of establishing the "pressing need for delay" and proving "that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. United States District Court, Southern District of Ohio, Eastern Division*, 565 F.2d 393, 396 (6th Cir. 1977).

Allegiance has failed to satisfy its burden. Asserting that a stay is necessary, Allegiance only argues that "Canadian law and Premier's Canadian litigation with Tricor will greatly impact" the current case due to the overlap of the evidence and parties involved in both cases. Without more, the Court does not find a "pressing need for delay" at this time. Therefore, the Court **DENIES** Allegiance's Motion to Stay the proceedings.

## VI. CONCLUSION

The Court **GRANTS in PART** and **DENIES in PART** Allegiance's Motion to Dismiss. (ECF No. 10). The Court **DISMISSES** counts Three, Four, and Seven against Allegiance and **GRANTS** Premier leave to file its Second Amended Complaint. The Court also **DENIES** Allegiance's Motion to Stay. The Court **DIRECTS** Premier to file its Second Amended Complaint, which shall include only the trade secret misappropriation and copyright infringement claims.

**IT IS SO ORDERED**.

1-2-2019
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**