UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PREMIER DEALER
SERVICES, INC.,

    Plaintiff,

v.

ALLEGIANCE
ADMINISTRATORS,
LLC, *et al.*,

    Defendants.

Case No. 2:18-cv-735
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Dimension Service Corporation's ("Dimension") Motion to Dismiss (ECF No. 49); Plaintiff Premier Dealer Services, Inc.'s ("Premier") Memorandum in Opposition (ECF No. 52); and Dimension's Reply brief (ECF No. 53). For the reasons that follow, the Court **DENIES** Dimension's Motion to Dismiss (ECF No. 49).

### I.

#### A. Factual Background

Premier is an Illinois corporation with its principal place of business in Dublin, Ohio. (Pl.'s Second Amend. Compl. ¶ 1). Dimension is an Ohio corporation with its principal place of business in Dublin, Ohio. (*Id.* ¶ 2). Defendant Allegiance Administrators, LLC ("Allegiance") is an Ohio limited liability company also with its principal place of business in Dublin, Ohio. (*Id.*). Allegiance was created by the merger of Dimension and several other entities. (*Id.*).

Premier provides products and services to automotive dealerships, including vehicle service contracts and customer loyalty programs. (*Id.* ¶ 3). In 2006, Premier developed its

proprietary Rating Process after undertaking a "major effort" to analyze its "historical loss data for its Vehicle Service Contracts in U.S. markets." (*Id.* ¶ 7). Premier invested tens of thousands of dollars into development of the Rating Process, as well as "significant time, resources, and effort." (*Id.* ¶ 9). The raw data used in the Rating Process was never disclosed to the public. (*Id.* ¶ 6). In 2008, Premier modified its Rating Process to extend to automotive dealership products and services in the Canadian market. (*Id.* ¶ 10).

Premier has a long-standing business relationship with Canadian company Tricor Automotive Group ("Tricor"). (*Id.* at 4). Tricor, which provides vehicle service agreements, mechanical breakdown insurance, limited warranties, and powertrain products to automotive dealerships in Canada, entered into a Private Label Marketing Agreement with Premier in 2011. (*Id.* ¶ 4 &16). Under the terms of the agreement, Tricor sold vehicle service contract forms and marketing materials developed by Premier. (*Id.* ¶ 16). As a result of the relationship, Tricor received access to Premier's proprietary Rating Process, as well as the Reserves (i.e., portion of retail cost which is set aside to pay future losses under a vehicle service agreement) generated by the Rating Process. (*Id.* ¶ 17– 18). The agreement provided, in pertinent part:

> [Tricor] acknowledges that all information obtained in the scope of its agency relating but not limited to the following: trade secrets, marketing strategy, customer lists, product performance data, past requirements of customers, and methods of doing business, to the extent that such information is not generally known by competitors, ***shall be deemed Proprietary Information of Premier and its insurer***. As a condition of this authorization and thereafter, [Tricor] agrees not to make use of or disclose to any third parties, any Proprietary Information obtained as a result of or in connection with the relationship contemplated herein. All computer systems, procedures, forms, controls, methods, programs, software, hardware, reports, compilations, used or developed while an agent of Premier ***are the exclusive property of Premier or its insurer*** and may not be shared, sold, disclosed in any manner either during the term of this Agreement or at any other time thereafter.

(*Id.* ¶ 17) (emphasis added). In addition, the agreement stated:

2

> Intellectual Property. . . . All forms, records and supplies including, but not
> limited to insurance forms and ***rate charts***, provided by Premier [per section 2.4],
> are and will remain the property of Premier, and will be surrendered to Premier
> immediately upon demand of Premier. . . .

(*Id.* ¶ 18) (emphasis added). A 2014 agreement between Premier and Tricor did not supersede the 2011 agreement. (*Id.* ¶ 21). Rather, under the terms of the 2014 agreement Tricor again agreed to "keep all Confidential Information of [Premier] confidential." (*Id.* ¶ 20).

In January 2018, Tricor allegedly disclosed Premier's Reserves to employees of Dimension without Premier's knowledge or consent. (*Id.* ¶ 25). Approximately one month after the disclosure, Dimension created Allegiance. (*Id.* ¶ 26). Tricor also allegedly provided Allegiance with Premier's trade secrets (i.e., Reserves) in electronic format. (*Id.* ¶ 25). Dimension gave Tricor a minority interest in Allegiance, purportedly to persuade Tricor to breach its agreement obligations to Premier. (*Id.* ¶ 27). Premier claims that Tricor began forwarding potential business transactions to Allegiance instead of Premier. (*Id.* ¶ 28). On May 29, 2018, Premier terminated its 2014 agreement with Tricor. (*Id.* ¶ 29).

Despite the terminated agreement, Premier asserts that Tricor continued to access Premier's electronic Rating Process portal "to illicitly obtain Rates by back-dating transactions to dates prior to [May 29, 2019]." (*Id.* ¶ 30). Dimension and Allegiance allegedly misappropriated Premier's Rating Process and Reserves more than 3,000 times. (*Id.*). In addition, Allegiance allegedly annexed Premier's Rating Process into its own electronic system so Tricor could access Premier's Reserves via the internet. (*Id.* ¶ 31).

## B. Procedural History

Premier initiated the instant action on July 27, 2018. (ECF No. 2). That same day Premier filed its First Amended Complaint, asserting eight counts: (1) misappropriation of trade secrets, (2) copyright infringement, (3) conversion, (4) replevin, (5) injunctive relief based on misappropriation of trade secrets, (6) injunctive relief based on copyright infringement, (7) tortious interference with contract and business relations, and (8) punitive damages. (*See* Pl.'s First Amend. Compl., ECF No. 3). Also on July 27, 2018, Premier filed a Motion for a Preliminary Injunction. (ECF No. 4). Approximately one month later, Dimension and Allegiance ("Defendants") moved to dismiss Premier's Complaint for failure to state a claim. ("First Motion to Dismiss," ECF No. 10). On November 6, 2018, the Court denied Premier's Motion for a Preliminary Injunction. (ECF No. 40).

On January 2, 2019, the Court granted in part and denied in part Defendants' Motion to Dismiss. (ECF No. 45). The Court dismissed Premier's claims for conversion, replevin, and tortious interference. However, the Court granted Premier leave to amend its complaint regarding its trade secret misappropriation and copyright infringement claims. On January 25, 2019, Premier filed its Second Amended Complaint. (ECF No. 46). Dimension moved to dismiss Premier's Second Amended Complaint on February 22, 2019. ("Second Motion to Dismiss," ECF No. 49). Dimension's Second Motion to Dismiss is now ripe for review.

## II.

Dimension argues the Court should dismiss Premier's claims because: (1) Dimension is a nominal defendant who has no legal interest in the instant action, and (2) Premier failed to assert any material factual allegations against Dimension and therefore failed to plead a claim for

which relief can be granted. (Mot. to Dismiss at 4–5, ECF No. 49). Premier counters that Dimension's Motion is untimely pursuant to Federal Rule of Civil Procedure 12(h)(2). (Resp. in Opp'n at 2, ECF No. 52). In addition, Premier contends its Second Amended Complaint raises sufficient allegations against Dimension to survive a Rule 12(b)(6) motion. (*Id.* at 4). Finally, Premier suggests Dimension's Motion violates Rule 11 and Rule 56 because it "goes out of its way to accuse Premier of making a false statement to the Court." (*Id.* at 4–5).

## A. Is Dimension's Motion Timely?

The motion before this Court is the second Rule 12(b) motion filed by Dimension. (ECF Nos. 10 & 49). Premier argues that "Dimension does not get a second bite at the apple." (*Id.* at 2). Premier points out that Rule 12(h)(2) "in setting out the ways in which a party may raise a failure to state a claim argument after the initial pre-answer motion, precludes the filing of a second 12(b)(6) motion to dismiss after an initial motion to dismiss." *Swart v. Pitcher*, 9 F.3d 109, 109 (6th Cir. 1993) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 n.3 (6th Cir. 1978)). According to Premier, "[i]f Dimension wanted to argue that Premier did not state a claim against Dimension individually, it should have made that argument six months ago when it filed its original motion." (Resp. in Opp'n at 3).

Dimension disagrees, arguing "the Rule 12(g) provision cited by Premier does not apply to block Rule 12(b) motions filed in response to an amended pleading." (Reply at 2, ECF No. 53). In Dimension's view, *Swart* is distinguishable from the present case because it did not involve an amended complaint. (*Id.* at 4). Here, Dimension contends that "Premier's Second Amended Complaint presents a new filing, for which Defendants [have] every right to attack procedural deficiencies." (*Id.* at 5).

Rule 12(g)(2) states that: "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." This consolidation rule was "intended to eliminate unnecessary delays at the pleading stage of a case by avoiding piecemeal consideration of pretrial motions." *Swart*, 9 F.3d at 109 (citing *Rauch*, 576 F.2d at 701). In turn, Rule 12(h)(2) provides for the waiver or preservation of certain defenses. The rule states that:

> A defense of *failure to state a claim upon which relief can be granted*, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim *may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.*

Fed. R. Civ. P. 12(h)(2) (emphasis added). Thus, a party does not waive a 12(b)(6) claim—even though not raised in an earlier motion to dismiss—if asserted: (1) in an answer, (2) in a motion for judgment on the pleadings, or (3) at trial. *Swart*, 9 F.3d at 109.

The Sixth Circuit has not yet decided whether an amended complaint triggers a new Rule 12(b) process. However, in *Williamson v. Recovery Ltd. Partnership*, this Court noted: "the filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in a timely fashion prior to the amendment of the pleading." 2009 WL 3172648, No. C2-06-292, at *3 (S.D. Ohio Sept. 30, 2009) (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1388). Sister district courts have made similar findings. *See Limbright v. Hofmeister*, 2010 WL 1740905, No. 5:09-cv-107-KSF, at *2 (E.D. Ky. Apr. 27, 2010) ("[a]n unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended") (citing *Rowley v. McMillan*, 502 F.2d 1326, 1332–1333 (4th Cir. 1974)); *SBAV, LP v. Porter Bancorp, Inc.*, 2014 WL 1257018, No. 3:13-CV-710, at *10 (E.D. Ky. Mar. 26, 2014) (holding same).

6

Accordingly, the Court finds that Premier's Second Amended Complaint did not automatically preserve Dimension's potential Rule 12(b) defenses. In addition, Dimension's Second Motion to Dismiss is not timely pursuant to Rule 12(h)(2), as it was not made in an answer, motion for judgment on the pleadings, or at trial. However, Dimension invoked Rule 12(b)(6) in Defendants' First Motion to Dismiss, arguing "[t]he allegations in Premier's Amended Complaint are speculative and lack factual and legal support to assert trade secret and copyright infringement claims." (First Mot. to Dismiss at 3, ECF No. 10). Thus, Dimension asserted "Premier fails to state a claim upon which relief may be granted." (*Id.* at 2). Because Dimension raised a Rule 12(b)(6) defense in its original pre-answer motion, its Rule 12(b)(6) defense was not waived in its Second Motion to Dismiss. As Dimension's Motion was timely, the Court turns to the merits.

## B. Did Premier Allege Sufficient Facts to Survive a Rule 12(b)(6) Motion?

In evaluating a complaint to determine whether it states a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe it in the light most favorable to the plaintiff and determine whether the factual allegations present any plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff's complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

7

Plausibility requires showing more than the "sheer possibility of relief but less than a probab[le] entitlement to relief." *Iqbal*, 556 U.S. at 678.

### 1. Is Dimension a Nominal Defendant?

Dimension contends any claims against it are subject to dismissal because it "is nothing more than a nominal defendant who has no legal interest" in the present dispute. (Mot. to Dismiss at 5). According to Dimension, generalized allegations against a whole group of defendants does not satisfy the Rule 12(b)(6) pleading standard under *Iqbal*. (*Id.* at 4). In addition, Dimension points out that "nominal defendants cannot be asserted into a matter simply to gain tactical advantages, when there is not a factual basis for a claim." (*Id.*) (citing *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980) (holding that the citizenship of nominal defendants should be disregarded when looking for diversity of citizenship)).

Premier argues the Second Amended Complaint raises factual allegations against both Dimension individually and Defendants collectively. (Resp. in Opp'n at 4). Premier cites paragraph 25 of the Second Amended Complaint for support: "[o]n or about January 25, 2018, Tricor, without Premier's knowledge of consent, disclosed Premier's Trade Secrets—particularly its Reserves or Rates—to employees of Defendant Dimension, including without limitation Paul Miles . . ." (*Id.*). Moreover, Premier avers that paragraphs 28, 30, 32–35, 37–38, 48–58, 65, and 70–80 of the Second Amended Complaint all reference "Defendants" plural—defined as both Dimension and Allegiance. (*Id.*).

A nominal party "is one who has no interest in the result of the suit and need not have been made a party thereto." *Maiden v. North American Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (citing *Grant County Deposit Bank v. McCampbell*, 194 F.2d 469, 472 (6th Cir. 1952)); *see also Rose v. Giamatti*, 721 F. Supp. 906, 914 (S.D. Ohio 1989). Despite

8

Dimension's assertion that a party's "nominal" status automatically triggers plausibility issues under the *Iqbal/Twombly* standard, *Maiden*, *Grant County*, and *Rose* solely discuss nominal parties in the context of subject matter jurisdiction—not pleadings. In addition, the Court disregards Dimension's argument that Premier's characterization of its relationship with Allegiance is "demonstrably false." (*See* Mot. to Dismiss at 3). Regardless of whether Dimension created or merged into Allegiance, the Court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

Taking the facts in the Second Amended Complaint as true, Dimension is not a nominal party. Premier alleges that "employees of Defendant Dimension" initially received Premier's trade secrets without its knowledge or consent. (Pl.'s Second Amend. Compl. ¶ 25, ECF No. 46). Premier further alleges that Dimension created its co-defendant Allegiance and gave Tricor a minority interest in Allegiance. (*Id.* ¶ 26–27). Accordingly, Premier's allegations suggest that Dimension was a key actor in the case, rendering it an interested party in the litigation. Dimension is not a nominal party and its first argument in favor of dismissal fails.

### 2. Did Premier Allege Sufficient Facts to Survive Rule 12(b)(6)?

Finally, Dimension avers that Premier failed to assert material factual allegations in its Second Amended Complaint which are sufficient to survive a Rule 12(b)(6) motion. (Mot. to Dismiss at 5). In Dimension's view, Premier fails to adequately plead the elements of either a trade secret misappropriation claim or a copyright infringement claim against Dimension. (*Id.*). Premier argues Dimension's Motion fails under Rule 12, as the Second Amended Complaint raises factual allegations against both Dimension and Defendants plural. (Resp. in Opp'n at 4). The Court will consider the sufficiency of each claim in turn.

### a. Trade Secret Misappropriation Claim

To prevail on an Ohio Uniform Trade Secret Act ("OUTSA") claim, a plaintiff must show "by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortgage Capital Corp.*, 258 Fed. Appx. 860, 861 (6th Cir. 2008). The OUTSA defines a "trade secret" as:

> [I]nformation, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D). The Ohio Supreme Court has adopted the following six factors for consideration in determining whether a plaintiff has shown the existence of a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquires and duplicate the information.

*State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 687 N. E. 2d 661, 672 (1997).

Determining "whether information constitutes a trade secret is a highly fact-specific inquiry." *Wellington Res. Grp. LLC v. Beck Energy Corp.*, No. 2:12-cv-104, 2013 WL 5325911, at *5 (S.D. Ohio Sept. 20, 2013). Still, "[c]onclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the bu rden of establishing trade

10

secret status." *Murray Energy Holdings Co. v. Bloomberg, L.P.*, 2016 WL 3355456, No. 2:15-CV-2845, at *7 (S.D. Ohio June 17, 2016) (quoting *Arnos v. MedCorp., Inc.*, 2010 WL 1730139, No. L-09-1248, at *3 (Ohio Ct. App. Apr. 30, 2010)).

Dimension argues that "Premier fails to make any material allegations against Dimension regarding Premier's proprietary rating calculation process, or regarding the broader class of . . . information that Premier continues to [characterize] as its trade secret." (Mot. to Dismiss at 5). The Court previously denied Defendants' First Motion to Dismiss with regard to its trade secret misappropriation claim concerning the rating process. (*See* Opinion & Order at 5, ECF No. 45). Therefore, the Court will only consider whether Premier sufficiently pleaded that Dimension misappropriated the remaining type of alleged trade secret—"the Reserves or Rates." (Pl.'s Second Amend. Compl. ¶ 8).

First, the Court must determine whether Premier's Reserves or Rates plausibly constitute a trade secret. Premier claims that "[u]sing the Rating Process, Premier was able to make reliable predictions about how much money needed to be set aside for future repairs in any of the thousands of possible permutations of the variables (the 'Reserves' or 'Rates')." (*Id.*). "Reserves," Premier alleges, "are the proprietary component of the retail costs of a Service Contract, i.e., the portion of the amount paid by the customer that is set aside to be used to pay losses under the agreements." (*Id.*). According to its Second Amended Complaint, "Premier's Rating Process and its fruits—the Reserves or Rates—shall be referred to collectively as 'Premier's Trade Secrets.'" (*Id.*).

Pursuant to Ohio Revised Code § § 1333.61(D), a trade secret may consist of the end phase of a technical process. Here, the Reserves or Rates are the "fruit" of Premier's proprietary Rating Process. In addition, Premier claims its "jealously guards its Trade Secrets" and its

11

"Trade Secrets are unknown outside the company except by persons who have executed a binding non-disclosure agreement." (Pl.'s Second Amend. Compl. ¶ 12–13). Premier further contends its "Trade Secrets are unknown within the company except by employees in Premier's Rate Department . . . after they have executed a non-disclosure agreement." (*Id.* ¶ 13). Therefore, Premier plausibly alleges that it takes reasonable efforts to maintain the secrecy of its Reserves or Rates. Finally, Premier states the information within its Trade Secrets (i.e., including its Reserves or Rates) "gives great economic advantage to the person with knowledge of it" and "would take an inordinate amount of time and expense for a competitor to acquire and duplicate." (*Id.* at 14–15). Taking these facts as true, the Court concludes Premier plausibly alleged that its Reserves or Rates constitute a trade secret.

To survive Rule 12(b)(6) on its trade secret misappropriation claim regarding Reserves or Rates, Premier must also plausibly demonstrate: "(2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland*, 258 Fed. Appx. at 861. Here, Premier's Second Amended Complaint alleges that it entered into a private label marketing agreement with Tricor in 2011. (Pl.'s Second Amend. Compl. ¶ 16). Under the terms of the agreement, Premier claims, Tricor sold Premier's Reserves or Rates under its private label. (*Id.* ¶ 23). Premier further claims "Tricor agreed to 'keep all Confidential Information of [Premier] confidential.'" (*Id.* ¶ 20). Accordingly, Premier alleged sufficient facts to plausibly indicate that Tricor acquired Premier's trade secret Reserves or Rates as a result of their confidential business relationship. In addition, Premier claims "[o]n or about January 25, 2018, Tricor, without Premier's knowledge or consent, disclosed Premier's Trade Secrets— particularly its Reserves or Rates—to employees of Defendant Dimension." (*Id.* ¶ 25). Thus, Premier raised sufficient facts to plausibly demonstrate the unauthorized use of a trade secret.

As such, Premier adequately stated a claim upon which relief may be granted. The Court **DENIES** Dimension's Motion to Dismiss Premier's trade secret misappropriation claim.

### b. Copyright Infringement Claim

Next, the Court analyzes whether Premier adequately pleaded a copyright infringement claim in its Second Amended Complaint. Dimension argues "Premier fails to allege that Dimension modified or used the Tricor forms, upon which Premier attempts to raise a copyright infringement claim." (Mot. to Dismiss at 5). Premier does not address this argument in its Response in Opposition. Rather, Premier maintains "Dimension is willfully ignoring the obvious" by asserting a Rule 12(b)(6) claim in response to its Second Amended Complaint. (Resp. in Opp'n at 4).

In its previous Opinion and Order, the Court noted the fact that Defendants "copied Premier's copyrighted forms is not disputed." (Opinion & Order at 7). Consequently, the Court found that Premier sufficiently established the elements of copyright infringement, including: (1) ownership of a valid copyright, and (2) proof that the defendant copied the valid copyright. (*Id.*) (citing *Kohus v. Mariol*, 328 F.3d 848, 854 (6th Cir. 2003)). However, the Court "concluded that Premier's First Amended Complaint did not adequately state a copyright infringement claim upon which relief could be granted because Premier failed to plausibly allege any infringing activity in the United States." (*Id.* at 13). The Court continued by stating:

> In its Proposed Second Amended Complaint, however, Premier claims that "Allegiance has no physical presence in Tricor's market in Canada. All acts take by Allegiance were carried out by its employees in and about Dublin, Ohio." Pl.'s Surreply at ¶ 36. By adding those factual allegations to its proposed pleadings, Premier adequately established a nexus between Allegiance's business activities in the United States and the alleged infringing activity in Canada. As a result, Premier cured its previously insufficient copyright infringement claim with its Proposed Second Amended Complaint. Therefore, the Court **GRANTS** Premier's Motion for Leave to Amend.

13

(*Id.*).

Examining Premier's Second Amended Complaint, the Court finds that it includes the curative language: "Allegiance has no physical presence in Tricor's market in Canada. All acts taken by Allegiance were carried out by its employees in and about Dublin, Ohio." (Pl.'s Second Amend. Compl. ¶ 36). Thus, Premier alleged sufficient facts to plausibly indicate a copyright infringement. The Court **DENIES** Dimension's Motion to Dismiss Premier's copyright infringement claim.

## C. Does Dimension's Motion Fail Under Rule 11 or Rule 56?

As the Court has already found that Premier's claims are timely and sufficient pursuant to Rule 12(b)(6), Premier's Rule 11 and Rule 56 arguments are **DISMISSED as Moot**.

### III.

For the reasons stated above, Premier's trade secret misappropriation and copyright infringement claims survive Rule 12(b)(6). Accordingly, the Court **DENIES** Dimension's Motion to Dismiss. (ECF No. 49).

**IT IS SO ORDERED.**

5-3-2019
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**