UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PREMIER DEALER SERVICES, INC.,**

    **Plaintiff,**

    v.

**ALLEGIANCE ADMINISTRATORS, LLC, et al.,**

    **Defendants.**

Case No. 2:18-cv-735
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Sanctions against Plaintiff for allegedly failing to disclose relevant information and records requested by Defendants during discovery (ECF No. 173). Plaintiff filed a response in opposition to the motion (ECF No. 187). For the reasons set forth below, Defendants' motion is **DENIED**.

**I.     Background**

This case is a copyright infringement dispute between two automobile service contract administration companies. Plaintiff Premier Dealer Services ("Premier") asserts that Defendants Allegiance Administrators ("Allegiance") copied language from its Lifetime Powertrain Loyalty Program Certificate ("LPLP Certificate") and has profited from using it in the course of business. Plaintiff has a valid copyright for the LPLP Certificate.

On July 29, 2021, this Court granted summary judgment to Plaintiff on its copyright infringement claim, finding no genuine issue of fact as to whether Defendants had copied Plaintiff's LPLP Certificates. (Op. & Order, ECF No. 128.) Defendants thereafter filed a motion for reconsideration of the Court's ruling, which the Court denied. (ECF No. 172.)

1

In anticipation of the May 31, 2022 trial on damages, the parties have engaged in an additional discovery phase. Defendants contend that discovery revealed additional information that Plaintiff should have produced before dispositive motions. Defendants move for sanctions under Federal Rule of Civil Procedure 37 and ask the Court to vacate its summary judgment ruling. The motion is ripe for review.

## II. Standard

The scope of discovery is set forth in Federal Rule of Civil Procedure 26, which provides:

Unless otherwise limited by court order, the scope of discovery is as follows:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Parties must supplement or correct their discovery disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

Rule 37 is the enforcement mechanism for Rule 26 requirements. "If a party improperly fails to provide discovery information or identify a witness, then the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Additionally, a court may impose appropriate sanctions, including but not limited to, "order[ing] payment of the reasonable expenses, including attorney's fees, caused by the failure" to produce or "staying further proceedings until the order is obeyed." Fed. R. Civ. P. 37(b)(2)(A). A district court may

also vacate its orders, such as summary judgment rulings, prior to entry of final judgment. *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) ("The inherent power to vacate orders prior to entry of final judgment is implicitly recognized in Rule 59 of the Federal Rules of Civil Procedure").

### III. Analysis

The Court notes that this is the second time Defendants have challenged the Court's summary judgment ruling at a late hour. First, Defendants filed their motion for reconsideration six months after the Court's summary judgment ruling. Second, Defendants moved for sanctions on April 20, 2022 despite knowing as early as February 2022 of Plaintiff's allegedly sanctionable conduct. Defendants ask the Court to vacate its summary judgment ruling finding Defendant liable for copyright infringement based on two affidavits from Kendall Olson, a former Premier employee.

Mr. Olson's first affidavit, dated February 14, 2022, states that he was responsible for product development at Premier, including the LPLP program. (Olson Aff. I ¶ 7, ECF No. 173-9.) Mr. Olson and his team established the program knowing that "loyalty programs and most, if not all, other aftermarket products were extremely similar across the finance and insurance industry." (*Id.* ¶ 10.) Mr. Olson created a PowerPoint presentation in 2006 ("2006 PowerPoint"), which he states was part of his team's "strategy and creation of the LPLP program." (*Id.* ¶ 8.)

Mr. Olson's second affidavit, dated April 20, 2022 (the same day as this Court's Order denying Defendant's motion for reconsideration), states that Premier has retained access to his business computer records, including the 2006 PowerPoint. (Olson Aff. II ¶ 4, ECF No. 173-1.) Mr. Olson further avers that he was a contractor for Premier, and that contrary to Premier's representations in discovery that the contractor agreements were unavailable, his contractor agreement was readily accessible to Premier. (*Id.* ¶¶ 11–12.) Finally, he states that Premier has

3

filed a lawsuit against him allegedly in retaliation to him providing these affidavits. (*Id.* ¶ 12.)

Defendants contend that Mr. Olson's two affidavits and the 2006 PowerPoint prove that Plaintiff's LPLP Certificate was copied from other works and is therefore not copyrightable work. Plaintiff submits that it did not produce the 2006 PowerPoint because it is not responsive to Defendants' original discovery requests and it did not disclose Kendall Olson's name because he did not participate in the creation of the LPLP Certificate. Neither the 2006 PowerPoint nor Mr. Olson's affidavit refute Defendants' liability nor disturb the summary judgment ruling. (ECF No. 187.) The Court agrees.

Kendall Olson worked in Premier's Product Development Division from 1999 to 2019. (Olson Aff. I ¶ 3, ECF No. 173-9.) Mr. Olson assisted with the strategy and development of the Lifetime Powertrain Loyalty Program and LPLP Certificate but does not specifically state that he drafted or created the LPLP Certificate. (*Id.* ¶ 7.) Mr. Olson avers that the LPLP program and Certificate are "modeled off" pre-existing products in the market. He states that many products in the market are "extremely similar" with "little to no produce differentiation." (*Id.* ¶¶ 9–10.) Defendants contend that Olson's testimony shows the work is unoriginal. But that is not the legal standard for whether a piece of work is copyrightable.

As this Court stated in its summary judgment opinion, the "threshold showing of originality is not a demanding one." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345, (1991) ("the requisite level of creativity is extremely low; even a slight amount will suffice.")). "Original . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity . . . even if the work is not a 'novel' one." *Id.* (citing *Feist*, 499 U.S. at 345–46) (internal quotations omitted). Thus, the

LPLP Certificate is copyrightable even if it was "modeled off" of or "extremely similar" to other programs and certificates so long as there is a minimal amount of creativity and it is not a duplicate of other works. Comparing the LPLP Certificate (ECF No. 100-1) to the other forms that Mr. Olson claims are similar (ECF No. 166-1) reveals, as a matter of law, that the language of the terms and conditions differs and is not duplicative, even if the topics are the same. Therefore, the LPLP Certificate is original and copyrightable.

The 2006 PowerPoint also does not support Defendants' argument that the LPLP Certificate is unoriginal, duplicative work. The 2006 PowerPoint does not mention the LPLP Certificate or program. (2006 PowerPoint, ECF No. 162-1, at 7.) It does not describe how the LPLP Certificate was created or whether its language was based on language from outside sources. Mr. Olson created the 2006 PowerPoint to explain how Premier could differentiate itself from other providers through various marketing techniques. (Olson Aff. ¶ 12.) It shows, at most, that the LPLP program is similar to other programs. Because the 2006 PowerPoint does not mention the LPLP Certificate and does not materially relate to the LPLP Certificate's creation, Plaintiff was not obligated to produce it in discovery.

In conclusion, even with Mr. Olson's testimony and the 2006 PowerPoint, Defendants would not have been able to create a genuine issue of material fact as to the LPLP Certificate's originality. Defendants' motion is denied.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion for Sanctions (ECF No. 173) is **DENIED**.

**IT IS SO ORDERED.**

**8/13/2022**  **s/Edmund A. Sargus, Jr.**
**DATE**  **EDMUND A. SARGUS, JR.**
  **UNITED STATES DISTRICT JUDGE**