UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PREMIER DEALER SERVICES, INC.,**

    **Plaintiff,**

v.

**ALLEGIANCE ADMINISTRATORS, LLC, et al.,**

    **Defendants.**

Case No. 2:18-cv-735
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on Defendants' Third Motion in Limine to exclude the expert opinions of Nicholas Biagioli. (ECF No. 181.) For the reasons set forth below, Defendants' motion is **GRANTED in part and DENIED in part**.

### I. Background

Plaintiff Premier Dealer Services ("Premier") brings trade secret misappropriation and copyright infringement claims against Defendants Allegiance Administrator, LLC and Dimension Service Corporation (together, "Defendants" or "Allegiance") alleging that Defendants wrongfully used a form created by Premier referred to as the LPLP Certificate. The facts are fully set out in the Court's July 29, 2021 Opinion and Order on the parties' cross motions for summary judgment. (*See* ECF No. 128.) The remaining issue of damages on Plaintiff's copyright infringement claim proceeds to trial on May 31, 2022. (*Id.* at 27; Scheduling Order, ECF No. 148.)

On May 2, 2022, Defendants filed the instant motion in limine to exclude the opinions and testimony of Nicholas Biagioli, an expert witness proffered by Plaintiff. Plaintiff filed a response in opposition to the motion (ECF No. 192). The motion is ripe for review.

1

## II. Standard

Evidentiary rulings are made subject to the district court's sound discretion, *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019), including the admissibility of expert testimony, *United States v. Dunnican*, 961 F.3d 859, 875 (6th Cir. 2020). This role, however, is not intended to supplant the adversary system or the role of the jury. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 531–32 (6th Cir. 2008). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). The burden is on the party offering the expert opinions and testimony to demonstrate "by a preponderance of proof" that the expert evidence is admissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

The district court's role in assessing expert testimony is a "gatekeeping" one, ensuring that only admissible expert testimony is submitted to the jury; its role is not to weigh the expert testimony or determine its truth. *United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (quoting *Daubert*, 509 U.S. at 597). Expert testimony, *i.e.*, testimony given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In this circuit, "[t]he Rule 702 analysis proceeds in three stages." *United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016).

First, an expert witness must be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[T]he issue with regard to expert testimony is not the qualifications

of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). "[T]he only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981).

Second, expert testimony must be relevant. Expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 208 (6th Cir. 2015) (quoting *United States v. Freeman*, 730 F.3d 590, 599–600 (6th Cir. 2013)); Fed. R. Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], p. 702–18 (1988)). This is a case-specific inquiry. *Madej*, 951 F.3d at 370 ("Whether an opinion 'relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court.").

Third, expert testimony must be reliable. Rule 702 provides the following general standards to assess reliability: whether "the testimony is based on sufficient facts or data," whether "the testimony is the product of reliable principles and methods," and whether "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d). The objective of the reliability requirement is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

3

### III. Analysis

Nicholas Biagioli was retained by Plaintiff to calculate Allegiance's gross revenue and Tricor's incremental profits after Tricor and Premier's business relationship ended. Defendants move to exclude Mr. Biagioli's expert testimony and reports on the grounds that his calculation of damages is not consistent with the damages potentially recoverable pursuant to 17 U.S.C. § 504. Furthermore, Defendants argue Mr. Biagioli's testimony does not comply with the requirements of Federal Rule of Evidence 702.

Plaintiff bears the burden of showing, beyond a preponderance of proof, that (1) Mr. Biagioli is "qualified by knowledge, skill, experience, training or education," (2) his testimony is "relevant," and (3) his testimony is "reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 (quoting Fed. R. Evid. 702).

#### A. Relevance

Defendants contend that Mr. Biagioli's testimony is not relevant to the damages available under the Copyright Act because he did not examine the market value of the copyrighted work, the LPLP Certificate, or the lost profits from Allegiance's infringement.

Plaintiff asserts that Defendants misunderstand the scope of Mr. Biagioli's testimony. Mr. Biagioli is an expert on the calculation of Premier's incremental profit and Allegiance's gross revenue. He was not retained to opine as to causation or the ultimate issue of Premier's lost profits or disgorgement of Allegiance's profits. (ECF No. 192 at 2–4.)

#### 1. Biagioli's Testimony on Gross Revenue

A plaintiff injured by direct copyright infringement is entitled to "'the actual damages suffered' as a result of the infringement, and the disgorgement of the infringer's profits that were 'attributable to the infringement.'" *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 632 (6th Cir.

4

2020) (quoting 17 U.S.C. § 504(b)). The Copyright Act and interpreting Sixth Circuit opinions establish that plaintiff's only burden to recover disgorgement profits is to present proof of the infringer's gross revenue. From there, it is the copyright infringer's burden to establish what portion of its gross revenue is not attributable to the infringement. *Id.* at 635; *see also Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 483 (6th Cir. 2007); *Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012).

Here, Mr. Biagioli opines that "Allegiance earned a total gross revenue of $1,529,619.62 from May 30, 2018, to July 31, 2021, in connection with its infringing LPLP Certificates that were given to customers by Tricor dealers." (Biagioli Report ¶ 15.) Evidence of Allegiance's gross revenue attributable to the infringement is directly relevant to Premier's burden of proof under 17 U.S.C. § 504(b).

2. **Biagioli's Testimony on Incremental Profits**

Mr. Biagioli was also retained to calculate Premier's incremental profit. (Biagioli Report ¶ 9, ECF No. 181-1.) Mr. Biagioli determined that Premier "would have earned incremental profit of $1,455,125.65 if it had acted as the administrator for 39,965 additional copyrighted LPLP Certificates given to customers by Tricor dealers after [Premier's] relationship with Tricor ended. (*Id.* ¶ 14.)

Defendant generally argues that Biagioli's calculations do not relate to the injury of the fair market value of the copyright or the disgorgement profits Allegiance received, which are the two methods to calculate damages under the statute. (ECF No. 181 at 2–3.) Plaintiff asserts that Mr. Biagioli's calculations of incremental profits is relevant to actual damages. Premier argues that this calculation is "helpful for the jury's understanding of the accounting principles involved and

5

the resulting calculation of incremental profit directly related to the Lifetime program with Tricor in Canada." (ECF No. 192 at 3.) The Court disagrees.

Pursuant to the Copyright Act, Allegiance is liable for damages caused by its infringement of the LPLP Certificate. Allegiance is not liable for damages caused by Tricor, an outside party not joined to this case. Mr. Biagioli's calculations of Tricor's profits from 39,965 LPLP Certificates given to customers by Tricor dealers after Premier's relationship with Tricor ended is not attributable to Allegiance's conduct or relevant to this case. Therefore, the Court excludes evidence of Tricor's profits stemming from the LPLP Certificate that is introduced for the purpose of holding Allegiance liable for those profits.

### B. Reliability

#### a. Insufficient Facts or Data

First, Defendants argue that Mr. Biagioli's report is not supported by sufficient facts or data because Premier gave Mr. Biagioli the underlying information he used to perform his calculations and that evidence is not admissible. This argument is easily disposed of upon reading Federal Rule of Evidence 703, which states in pertinent part:

> An expert may based an opinion on facts or data in the case that the expert has been made personally aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Fed. R. Evid. 703. Therefore, Mr. Biagioli's opinion testimony is admissible even if it relies on inadmissible data he received from Premier.

#### b. Application of Accounting Principles

Next, Defendants argue that Mr. Biagioli's has not reliably applied sound accounting principles in developing his testimony. Defendants argue that Mr. Biagioli's calculation of gross revenue does not consider the overhead costs, including "equipment, building expenses, utilities,

6

supervision, management, or any other cost associated with operating the business." (ECF No. 181 at 7.)

As the Court stated above, to recover lost profits, Plaintiff's only burden is to establish gross revenue. Mr. Biagioli does not have to consider deductible costs from Allegiance's revenue such as overhead. In fact, that is Allegiance's burden to prove to the jury. 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."). The Court finds that Mr. Biagioli reliably applied his knowledge to determine Allegiance's gross revenue.

### C. Conclusion

For the foregoing reasons, Plaintiff's motion in limine (ECF No. 176) is **GRANTED in part and DENIED in part**. Mr. Biagioli's testimony regarding gross revenue is admissible but his testimony regarding incremental damages is inadmissible and hereby excluded.

As with all in limine rulings, this ruling is subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

<u>5/19/2022</u>                                         <u>s/Edmund A. Sargus, Jr.       </u>
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**