**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PREMIER DEALER SERVICES, INC.,**

    **Plaintiff,**       **Case No. 2:18-cv-735**
                **JUDGE EDMUND A. SARGUS, JR.**
  **v.**           **Magistrate Judge Chelsey M. Vascura**

**ALLEGIANCE ADMINISTRATORS,**
**LLC, et al.,**

    **Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court on several motions in limine:

- Plaintiff's Second Motion in Limine (ECF No. 177)

- Defendants' First Motion in Limine (ECF No. 178)

- Defendants' Second Motion in Limine (ECF No. 180)

- Defendants' Fourth Motion in Limine (ECF No. 182)

- Defendants' Fifth Motion in Limine (ECF No. 183)

- Defendants' Sixth Motion in Limine (ECF No. 184)

- Defendants' Seventh Motion in Limine (ECF No. 185)

For the following reasons, Plaintiff's motion is **DENIED**, and Defendants' motions are

**GRANTED in part and DENIED in part and HELD IN ABEYANCE in part**.

## I.   BACKGROUND

Plaintiff Premier Dealer Services ("Premier") brings trade secret misappropriation and

copyright infringement claims against Defendants Allegiance Administrator, LLC and Dimension

Service Corporation (together, "Defendants" or "Allegiance") alleging that Defendants wrongfully

used a form created by Premier. The form is referred to as the LPLP Certificate. The facts are fully

set out in the Court's July 29, 2021 Opinion and Order on the parties' cross motions for summary judgment. (*See* ECF No. 128.) The remaining issue of damages on Plaintiff's copyright infringement claim proceeds to trial on May 31, 2022. (*Id.* at 27; Scheduling Order, ECF No. 148.)

## II.    LAW

### A.  Motion in Limine Standard

"Neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion *in limine*." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 348 F. Supp. 3d 698, 721 (S.D. Ohio 2016). The practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in limine* is to allow a court to rule on issues pertaining to evidence prior to trial to avoid delay and ensure an evenhanded and expedient trial." *In re E.I. du Pont*, 348 F. Supp. 3d at 721 (citing *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). However, courts are generally reluctant to grant broad exclusions of evidence before trial because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Unless a party proves that the evidence is clearly inadmissible on all potential grounds—a demanding requirement—"evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *see also Koch*, 2 F. Supp. 2d at 1388 ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence."). The denial, in whole or in part, of a motion *in limine* does not give a party license to admit all evidence contemplated by the motion; it simply means that the Court cannot adjudicate the motion

2

outside of the trial context. *Ind. Ins Co.*, 326 F. Supp. 2d at 846. Evidentiary rulings are made subject to the district court's sound discretion. *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019).

### B. Copyright Infringement Damages

In general, copyright infringers are liable "for either ... (1) the copyright owner's actual damages and any additional profits of the infringer ... or (2) statutory damages." 17 U.S.C. § 504(a). The pertinent statute on proving actual damages and profits for a direct copyright infringement is 17 U.S.C. § 504(b), which provides:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

In the alternative, "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1).

### 1. Actual Damages and Profits

"Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act." *Cotter v. Christus Gardens, Inc.*, 238 F.3d 420 (6th Cir. 2000) (quoting H.R.Rep. No. 94-1476, at 161 (1976), *reprinted in* 17 U.S.C.A. § 504, at 146 (West 1996)). The copyright owner must prove actual damages and lost profits by a preponderance of the evidence. *Smith v. Thomas*, 911 F.3d 378, 381 (6th Cir. 2018).

There is no prescribed method of calculating actual damages. In some cases, actual damages may be calculated as the amount the copyright infringer would have paid the copyright owner to use the copyrighted material, often called a license fee. *Navarro v. Procter & Gamble Company*, 501 F. Supp. 3d 482 (S.D. Ohio 2020). Actual damages may also be the "loss in the fair market value of the copyright." *Cotter*, 238 F.3d at 420. Where there is no license fee or apparent decrease to the value of the copyright, the actual damages may be the amount of profit the copyright infringer received for using the copyright. *See id.* However, "[a] plaintiff may not recover its full lost profits plus all of the defendant's profits, for this would constitute a forbidden double recovery." *Id.* (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02A, at 14-10 (2000)).

Compared to calculating actual damages, calculating lost profits is somewhat clearer. Section 504(b) of the Copyright Act dictates that the copyright owner's burden is "to present proof only of the infringer's gross revenue." Then the burden shifts to the infringer to show 1) deductible expenses, and 2) the elements of revenue attributable to factors other than the copyrighted work. *Balsley v. LFP, Inc.*, 691 F.3d 747, 768 (6th Cir. 2012). Copyright infringers must "prove their deductible expenses with specificity." *Singletary Constr., LLC v. Reda Home Builders, Inc.*, 815 F. App'x 892, 899–900 (6th Cir. 2020). If the defendant does not meet its burden, the gross revenue figure is left to stand as the complete measure of lost profit damages. *Balsley*, 691, F.3d at 769.

### 2. Statutory Damages

Again, the copyright owner may elect to recover actual damages and lost profits, or statutory damages. Because actual damages are often difficult to prove in copyright infringement cases, statutory damages ensure that infringers are adequately deterred and copyright owners are adequately compensated. *See Douglas v. Cunningham*, 294 U.S. 207, 209 (1935).

Section 504(c)(1) allows for statutory damages "for all infringements involved in the action, with respect to any one work, ... in a sum of not less than $750 or more than $30,000 as the court considers just." Where the copyright owner establishes willful infringement, the Court may increase the award of statutory damages to a sum of not more than $150,000. 17 U.S.C. § 504(c)(2). On the other hand, where the infringers establish that they were not aware and had no reason to believe that their acts constituted copyright infringement, *i.e.*, innocent infringement, the Court, in its discretion, may reduce the award of statutory damages to a sum not less than $200. *Id.*

The awarding of a specific amount of statutory damages is a factual determination, which would be made either by the Court or, if requested by a party, a jury. *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340 (1998). To elect statutory damages, the copyright owner should inform the court of his intent to seek statutory damages at any point before final judgment. *Smith*, 911 F.3d at 383 (citing William F. Patry, *Patry on Copyright* § 22:171 (2018)). The election "does not have to exclude the possibility of actual damages—plaintiffs are entitled to simultaneously seek actual damages and statutory damages in the alternative." *Id.* In other words, the plaintiff may present evidence of both to the trier of fact "and wait until the verdict is rendered to select which one it prefers." *Id.* (citing *Curet-Velazquez v. ACEMLA de Puerto Rico, Inc.*, 656 F.3d 47, 57–58 (1st Cir. 2011)).

Whereas actual damages must be proven by a preponderance of the evidence, statutory damages "do not require specific proof" and are instead set at the district court or jury's discretion within the statutory bounds. *Smith*, 911 F.3d at 381. In determining the amount of damages to award, the following factors are relevant: "(1) the infringer's blameworthiness, *i.e.,* whether the infringement was willful, knowing, or innocent, (2) the expenses saved and the profits reaped by the defendants in connection with the infringement, and (3) the revenues lost by the plaintiffs due

to the defendants' conduct." *Jobete Music Co. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077, 1085–86 (S.D. Ohio 2003). The trier of fact has broad discretion in awarding statutory damages within statutory range in §504(c)(1). *Id.*

## III.    ANALYSIS

### A.    Plaintiff's Second Motion in Limine to Exclude Evidence of Copyright Liability and Miscellaneous Irrelevant Evidence (ECF No. 177)

Plaintiff moves to exclude evidence that it contends relates to Defendants' copyright liability that Defendants designated for trial, including evidence of: Allegiance's creation of the LPLP Certificate; representations that Tricor made to Allegiance that it owned the Old Tricor Form when it was sending the form to Allegiance and dictating changes to the form; evidence that the LPLP Certificate is boilerplate language, common in the industry, or substantially similar to other forms. (ECF No. 177.) In response, Defendants argue that Plaintiff mischaracterizes the evidence and that the evidence will not be used to dispute copyright infringement liability. (ECF No. 199.)

The Court's prior Order on Plaintiff's Motion in Limine (ECF No. 172) excluded:

- Arguments as to whether Defendants' and Tricor's use of the LPLP Certificate was improper.
- Arguments as to whether Defendants are liable for copyright infringement.
- Evidence relating to Premier's authorship and creation of the LPLP Certificate.
- Evidence that Premier's LPLP Certificate was not entitled to copyright protection, including arguments that the LPLP Certificate was boilerplate language common in the industry, or substantially similar to other forms.

The Court sees no reason to revisit these matters, with one exception. As to the fourth item, evidence that the LPLP Certificate is boilerplate language, common in the industry, or substantially similar to other forms is relevant to show how much of Allegiance's revenue from administering Tricor's contracts was due to the language of the LPLP Certificate. For clarity, the Court notes that Allegiance is entitled to present evidence that all certificates in the industry are similar and

therefore its profit was not heavily reliant on the language of the Certificate. Allegiance is not, however, able to claim that the LPLP Certificate was not entitled to copyright protection.

Additionally, while a challenge to Premier's copyright is properly excluded, evidence of Allegiance's creation of their certificate is potentially admissible to show blameworthiness. Plaintiff represents that it will determine whether to recover actual damages and disgorgement profits or statutory damages after the jury reaches a verdict as to both alternative methods of recovery. (Final Pretrial Order at 2, ECF No. 209.) As discussed above, in determining statutory damages, a trier of fact considers "the infringer's blameworthiness, *i.e.*, whether the infringement was willful, knowing, or innocent." *Jobete Music Co.*, 285 F. Supp. 2d at 1085–86. Allegiance is entitled to present evidence that Tricor represented that it owned the certificate and that Tricor dictated changes to the certificate to Allegiance to show whether the infringement was willful, knowing or innocent.

Plaintiff further seeks to exclude the following evidence on the grounds that it is irrelevant, likely to confuse the jury, or otherwise unduly prejudicial:

1. Correspondence between counsel for Premier and counsel for Tricor regarding the brewing dispute in Canada in early 2018.
2. Pleadings in the Canadian litigation.
3. Pleadings in the litigation between Mr. Olson and Premier.
4. Pleadings in this action.
5. Evidence relating to "rates," vehicle service contracts, and other matters resolved by the Court's ruling on summary judgment.
6. Premier's consolidated financial statements.
7. Hearsay evidence, e.g., deposition testimony of Allegiance personnel

(ECF No. 177 at 3–4.) Plaintiff, however, does not argue why each of the above is inadmissible on all grounds. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846 (Unless a party proves that the evidence is clearly inadmissible on all potential grounds, "evidentiary rulings should be deferred until trial

so that questions of foundation, relevancy and potential prejudice may be resolved in proper context."). Therefore, for the reasons stated above, Plaintiff's Motion is **DENIED**.

**B.     Defendants' First Motion in Limine to Exclude Evidence of Allegiance's Administration Revenue as Evidence of Premier's "Actual Damages" (ECF No. 178)**

Defendants moves to exclude evidence or arguments that Plaintiff is entitled to lost profits based on the amount of Tricor Automotive Group, Inc.'s ("Tricor") LPLP programs that Allegiance has administered. Allegiance argues the evidence is improper because: (1) Premier terminated its business relationship with Tricor and had no reasonable expectation of future revenue from Tricor; and (2) the claimed damages are not based on any analysis of overall lost profits relating to the LPLP Certificate. (ECF No. 178.)

Allegiance sets forth relevant facts for its argument. Tricor offers Canadian automobile dealerships various finance and insurance products to provide coverage related to the new and used vehicles purchased at the dealerships. (Second Amend. Compl. ¶ 4, ECF No. 46.) In 2001, Premier began administering Tricor's service contracts. On May 29, 2018, Premier sent Tricor a letter terminating its business relationship with the entity pursuant to the at-will termination clause in the agreement between Premier and Tricor. (Termination Correspondence, ECF No. 178-2.) That same month, Allegiance began to administer Tricor's service contracts.

Allegiance argues that because Premier voluntarily terminated its business relationship with Tricor, it is not entitled to profits Allegiance received from performing administration services for Tricor. Allegiance asks this Court to preclude Premier's argument that its "actual damages" are, in part, based on the number of LPLP programs Allegiance has administered for Tricor. Instead, Allegiance contends that Plaintiff's actual damages are properly computed by determining the loss of value to its copyright due to the infringement.

Premier responds that the number of LPLP programs is relevant to calculate its actual damages because it shows what Premier could have made in profit if Allegiance had not infringed. Furthermore, Premier contends that it may seek Allegiance's profits from working with Tricor as actual damages despite Premier previously terminating its business relationship with Tricor because Premier's termination did not give Allegiance the right to infringe Premier's work. (ECF No. 195.)

As both sides cite, "[a]ctual damages can thus be thought of as the anticipated amount that the copyright holder would have received had the infringer not infringed." *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 632 (6th Cir. 2020). Whether Premier defines Allegiance's profits from the LPLP Certificate as actual damages or disgorged profits makes no difference here. Premier is entitled to recover those profits under one title or the other but not both. *See Cotter*, 238 F.3d at 420. Therefore, Premier may present evidence of the number of LPLP Certificates sold by Allegiance to show what amount of profit Allegiance earned from the LPLP Certificate. *See Smith*, 911 at 383 (approving plaintiff's presentation of evidence that the defendant was earning $5,000 to $7,000 per performance of plaintiff's copyrighted song); *Cotter*, 238 F.3d 420 (calculating damages using the number of the particular copyright-infringing statues sold from the store). Defendants' motion is **DENIED**.

C.     **Defendants' Second Motion in Limine to Exclude Evidence Suggesting a Direct Relationship between the LPLP Certificates and Allegiance's Revenue (ECF No. 180)**

Defendants move to preclude testimony that: (1) it sells the LPLP Certificates, (2) receives them when a program is initiated, or (3) provides the Certificates to the Tricor dealers to allow the dealers to provide the forms to customers. Defendants assert that there is only an indirect relationship between Allegiance and Tricor's use of the LPLP Certificate. (Allegiance Deposition

at 41, 231, ECF No. 180-1.) Therefore, the Court should preclude Plaintiff from arguing a direct relationship between the LPLP Certificates and Allegiance's revenue for performing administration services on the programs initiated by Tricor.

Plaintiff responds that Allegiance's corporate representative's deposition does not affirmatively establish whether Allegiance played a direct or indirect role on infringement. Plaintiff contends that Tricor owns 95% of Allegiance and, therefore, the Court should reject Allegiance's attempt to distance itself from Tricor. (ECF No. 191.)

This Court ruled as a matter of law that Allegiance is liable for direct copyright infringement of Premier's LPLP Certificate. Allegiance may not argue that it is indirectly involved in the infringement. Allegiance may, however, dispute what amount of its revenue stems from the LPLP Certificate and to what extent Tricor versus Allegiance benefits from using the Certificate. Defendants' Second Motion in Limine is **DENIED**.

### D.    Defendants' Fourth Motion in Limine to Exclude Evidence of Allegiance's Administration Fees to Show Disgorgement Profits (ECF No. 182)

Defendants move to exclude evidence regarding Allegiance's administration revenue as part of any profits that should be allegedly disgorged under Section 504(b) of the U.S. Copyright Act. According to Defendants, Premier has the burden to prove that Defendants' gross revenues have a reasonable relationship to the infringement and Premier has failed to put forth any expert testimony to establish any causal link between them. Plaintiff Premier responds that Defendants misinterpret the burden on each party under the Copyright Act. (ECF No. 193.) The Court agrees.

To recover lost profits, also called disgorgement profits, the copyright owner's burden is only to prove "the infringer's gross revenue." 17 U.S.C. § 504(b). The Sixth Circuit has stated that the revenue must be reasonably related to the infringement and "any relevant revenue that could be traced back to the infringement can be submitted to the jury." *ECIMOS*, 971 F.3d at 635;

*Navarro*, 515 F. Supp. 3d 718, 764–65 (S.D. Ohio 2021) (describing the Sixth Circuit's reasonable relationship standard as "something less than causation," "generous," and "relatively lax"). Then, it is the infringer's burden to prove "why certain profits are or are not attributable to the defendant's infringement of the plaintiff's copyrighted material." *See Balsley v. LFP, Inc.*, 691 F.3d 747, 769 (6th Cir. 2012).

Here, Plaintiff has sufficient evidence that the amount it submits as Allegiance's gross revenue can be traced back to the infringement. Plaintiff submits that the gross revenue amount reached by Christopher Biagioli, its expert, is limited to the LPLP program in Canada administered by Allegiance for Tricor. Allegiance may dispute the calculation of that amount at trial. The Court will not exclude evidence of Allegiance's revenue from administering the Lifetime program for Tricor in Canada at this time. Defendants' Fourth Motion in Limine is **DENIED**.

### E.    Defendants' Fifth Motion in Limine to Exclude Hearsay Evidence (ECF No. 183)

Defendants move to exclude certain testimony from Lisle Greenweller's deposition and Nicholas Biagioli's Report on the grounds that it is inadmissible hearsay. Specifically, Defendants move to preclude a document that purportedly lists Premier's costs for administering the LPLP Program including how much time employees spend on the LPLP Program. (*See* ECF No. 183 at 5.) Defendants argue that the Time Projection Document is based on interview responses of unnamed employees of Premier and therefore the document and Ms. Greenweller's testimony regarding the document is hearsay.

Plaintiff Premier argues that the document is not hearsay. It is a summary of the average amount of time that certain employees spend on limited portions of their duties relating to administration of the LPLP Program. The document was created by Ms. Greenweller, Premier's president, for this litigation. It is not a collection of out of court statements, but instead knowledge

that Greenweller gained in the course of her role as president of the company and recorded on this document. (ECF No. 194.) If the document is hearsay, then Plaintiff argues that is still admissible under the Residual Exception.

The Court will determine the admissibility of the document and testimony based on the evidence admitted during trial. Defendant's Fifth Motion in Limine is **HELD IN ABEYANCE**.

**F.     Defendants' Sixth Motion in Limine to Exclude Evidence of Fees Allegiance Received for Administration of Tricor's Engine for Life Program Contracts (ECF No. 184)**

Defendants move to exclude evidence regarding the administration fees Allegiance has received for administering its Engine for Life Program for Tricor. During damages discovery, Defendants claim they inadvertently provided administration revenue data from the Engine for Life Program, which is separate and unrelated to the LPLP Program. Even though it is not related to the LPLP Program, Defendants contend that Plaintiff's experts have included revenue data from the Engine for Life Program in their reports. (ECF No. 184.)

Plaintiff responds that the Engine Program has its own certificate that is identical to the LPLP Certificate and therefore Plaintiff should be able to seek damages from Allegiance's Engine Program Certificate as well as the LPLP Certificate. (ECF No. 197.) Plaintiff produces the Engine for Life Certificate (ECF No. 197-4), which contains identical wording as the LPLP Certificate (ECF No. 197-5).

Defendants assert that Plaintiff cannot seek damages for the Engine Program because it is not within the scope of the Second Amended Complaint or Summary Judgment ruling. The Court agrees. Plaintiff filed this suit alleging that Defendants are liable for copyright infringement based on their LPLP Certificate. The Court's summary judgment ruling held that Defendants were liable for copyright infringement based on their LPLP Certificate. The Court has *not* found that

Defendants are liable for copyright infringement based on the Engine for Life certificate. Plaintiff may not add separate certificates and programs to their claims at this time. Therefore, the Court **GRANTS** Defendants' motion to exclude evidence of the Allegiance's administration fees for the Engine for Life program and certificate to the extent the evidence is used to argue for damages unrelated to the LPLP Certificate.

### IV.    Conclusion

For the foregoing reasons,

- Plaintiff's Second Motion in Limine (ECF No. 177) is **DENIED**;

- Defendants' First Motion in Limine (ECF No. 178) is **DENIED**;

- Defendants' Second Motion in Limine (ECF No. 180) is **DENIED**;

- Defendants' Fourth Motion in Limine (ECF No. 182) is **DENIED**;

- Defendants' Fifth Motion in Limine (ECF No. 183) is **HELD IN ABEYANCE**;

- Defendants' Sixth Motion in Limine (ECF No. 184) is **GRANTED**.

As with all in limine rulings, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pre-trial motion and memoranda.

**IT IS SO ORDERED.**

**5/20/2022**                                    **s/Edmund A. Sargus, Jr.**
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**