## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**PREMIER DEALER SERVICES, INC.,**

      **Plaintiff,**

           **v.**

**ALLEGIANCE ADMINISTRATORS, LLC,** *et al.*,

      **Defendants.**

**Case No. 2:18-cv-735**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Premier Dealer Services, Inc.'s Motion for Prejudgment Interest (ECF No. 242), Motion for Permanent Injunction (ECF No. 243), Motion for Attorneys' Fees (ECF No. 248), Motion to Compel Expert Fees and for Attorneys' Fees (ECF No. 257), and Defendant Allegiance Administrators, LLC's Motion to Stay Briefing on Premier's Motion for Expert Deposition Costs (ECF No. 258). For the reasons set forth below, the Court **GRANTS** Premier's Motion for Prejudgment Interest, **GRANTS** Premier's Motion for Permanent Injunction, **GRANTS** Premier's Motion for Attorneys' Fees, **GRANTS in part** and **DENIES in part** Premier's Motion to Compel Expert Fees and for Attorneys' Fees, and **DENIES as moot** Allegiance's Motion to Stay Briefing on Premier's Motion for Expert Deposition Costs.

## I. BACKGROUND

The Court set forth the facts giving rise to this case in its Opinion and Order granting Premier summary judgment on its copyright infringement claim against Allegiance (ECF No. 128), as well as in its Opinion and Order finding Premier entitled to receive $441,239 in lost profits for Allegiance's copyright infringement of Premier's LPLP Certificates (ECF No. 241). For ease of

reference, the facts set forth in the Court's August 25, 2022, Opinion and Order are largely restated below:

### A. Facts

Plaintiff Premier Dealer Services, Inc. ("Premier") and Defendant Allegiance Administrators, LLC ("Allegiance") compete as administrators of automobile service contracts and loyalty programs. Automobile dealerships offer loyalty programs to encourage customers to return to that dealership for maintenance in exchange for a discounted rate. Allegiance and Premier administer loyalty programs by enrolling customers and handling customer claims in the programs.

Tricor Automotive Group ("Tricor"), which is not a party to this case, was the obligor in all service contracts and loyalty programs relevant to this lawsuit. Tricor offers Canadian automobile dealerships various service contracts and loyalty programs that those dealerships sell to customers buying new and used vehicles. From 2001 to May 29, 2018, Premier served as Tricor's administrator of service contracts and loyalty programs. One program is called the "Lifetime Powertrain Loyalty Program (LPLP)." To sign up for the LPLP, customers or Premier representatives completed an administrative form called the LPLP Certificate—which is the subject of Premier's copyright infringement claim. Premier has two copyrights registered with the U.S. Copyrights Office for its LPLP Certificates.

After Premier stopped working with Tricor in 2018, Allegiance began administering service contracts and loyalty programs for Tricor. Tricor sent Allegiance the Canadian LPLP Certificates that Premier created for Tricor's use and represented that the LPLP Certificates were Tricor's. Allegiance made minor changes to the LPLP Certificates. The language and appearance of the documents, however, remained nearly identical to the LPLP Certificates Premier created.

Premier filed suit against Allegiance in the Franklin County Court of Common Pleas on June 4, 2018, alleging copyright infringement of its LPLP Certificates, misappropriation of trade secrets, and violations of Ohio tort law. Allegiance removed the case to federal court. On summary judgment, this Court held Allegiance liable for copyright infringement of Premier's LPLP Certificates. (Op. & Order, ECF No. 128.) The Court held a bench trial to determine Premier's copyright infringement damages, finding Premier entitled to receive $441,239 in lost profits. (Minute Entries, ECF Nos. 227, 228; Op. & Order, ECF No. 241.)

### B.  Subsequent Procedural Background

Shortly after the Court issued its Opinion and Order finding Premier entitled to an award of lost profits, Premier filed a Motion for Prejudgment Interest and a Motion for Permanent Injunction (ECF Nos. 242, 243, respectively). Allegiance opposes both motions (ECF Nos. 244, 246, respectively), to which Premier has replied (ECF Nos. 245, 250, respectively). On September 30, 2022, Premier filed a Motion for Attorneys' Fees (ECF No. 248), prompting Allegiance's opposition (ECF No. 251) followed by Premier's reply (ECF No. 252.)

On January 20, 2023, Premier filed a Motion to Compel Expert Fees (ECF No. 257), which Allegiance opposes (ECF No. 263).[1] Premier timely replied to Allegiance's opposition. (ECF No. 265.)

Premier's motions are fully briefed and ripe for review.

---

[1] Prior to filing its opposition, Allegiance sought an order staying briefing on the issue of expert fees pending resolution of its appeal before the Sixth Circuit. (ECF No. 258.) On March 10, 2023, the Sixth Circuit dismissed Allegiance's appeal, and Allegiance subsequently filed its opposition brief. (ECF No. 263.) Accordingly, Allegiance's Motion to Stay Briefing on Premier's Motion for Expert Deposition Costs is **DENIED as moot**. (ECF No. 258.)

## II. PREMIER'S MOTION FOR PREJUDGMENT INTEREST

Premier asserts that an award of prejudgment interest is appropriate in this matter, and it requested the same in its Second Amended Complaint. (Premier Mot. Prejud. Interest, ECF No. 242; 2d Am. Compl. at 16, ECF No. 46.)

The leading Sixth Circuit case on prejudgment interest under the Copyright Act is *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 282 (6th Cir. 1988). In *Robert R. Jones*, Judge Martin, writing for a unanimous panel, stated:

> The Copyright Act neither expressly allows nor prohibits awarding prejudgment interest in copyright infringement cases. As we stated in *Bricklayers'*, "in the absence of legislative direction, the Supreme Court directed that the decision to grant or deny prejudgment interest should hinge on whether to do so would further the congressional purposes underlying the obligations imposed by the statute in question."

*Robert R. Jones*, 858 F.2d at 282 (citations and alterations omitted). While the Sixth Circuit did not explicitly identify the "congressional purposes underlying" the Copyright Act, in vacating the district court's award of prejudgment interest, the Circuit panel's decision turned on two considerations: (1) whether the measure of damages, without accounting for prejudgment interest, suffices to promote innovation; and (2) whether the measure of damages, without accounting for prejudgment interest, deters future copyright infringement. *Id.* ("We believe the measure of damages applied in this case is clearly sufficient to promote innovation in architectural design and deter unauthorized exploitation of someone else's creative expressions.")

Two other district courts in this Circuit have tackled the issue of prejudgment interest under the Copyright Act. In *Shell v. Lautenschlager*, the Northern District of Ohio declined to award prejudgment interest after finding the plaintiff entitled to statutory damages. 2018 U.S. Dist. LEXIS 166573, *11-12 (N.D. Ohio Sep. 27, 2018). In rejecting the plaintiff's request for prejudgment interest, the court first noted that "[w]hen courts have granted prejudgment interest,

4

the underlying awards were based, in full or in part, on actual damages and/or profits, not on statutory damages alone." *Id.* at 11 (quoting *Broad. Music, Inc. v. Nortel Grill, Inc.*, 1991 U.S. Dist. LEXIS 18391, *6 (N.Y.W.D. Aug. 27, 1991)). The court then cited approvingly to *Murray v. Shaw Indus., Inc.*, 990 F. Supp. 46, 48 (D. Mass. 1997). *Id.* at 11–12. In *Murray*, the Massachusetts District Court declined to award prejudgment interest where the plaintiff did not suffer any direct economic damages (*i.e.*, lost profits or diminution in the value of plaintiff's intellectual property), explaining that "[p]rejudgment interest compensates the plaintiff for the loss of the use of money that would have been hers but for the wrongful conduct of the defendant." *Murray*, 990 F. Supp. at 48.

The other district court decision from the Sixth Circuit that addresses prejudgment interest under the Copyright Act is *Goldman v. Healthcare Mgmt. Sys.*, 559 F. Supp. 2d 853 (W.D. Mich. June 5, 2008). In *Goldman*, the Western District of Michigan answered the fundamental question of whether the Copyright Act even permitted a prejudgment interest award. *Id.* at 863–865. After acknowledging that a majority of federal circuits have found such awards permissible, coupled with the Sixth Circuit's *Robert R. Jones* decision that "does not clearly and unambiguously state that prejudgment interest is not allowed," the court concluded that an award of prejudgment interest is appropriate in the following circumstance:

> In the event that actual damages, profits, costs and attorney fees are insufficient to provide the sort of deterrent intended by Congress, this Court should be able to award prejudgment interest.

*Goldman*, 559 F. Supp. 2d at 865.

Before the Court is such a case. Following the Court's Order granting summary judgment in Premier's favor on its copyright infringement claim, Allegiance continued to exploit Premier's certificate:

> Q.     Now, this product that we've been talking about, Tricor has continued to distribute it and Allegiance has continued to administer it since the Court's ruling on July 29th, 2022 -- or '21, excuse me; right?
>
> A.     Correct.

(Murphy Dep. at 67:19-24, ECF No. 191-1.)

In *Robert R. Jones*, the Sixth Circuit reversed and vacated the district court's award of prejudgment interest because the measure of damages was "clearly sufficient to promote innovation" and "deter unauthorized exploitation of someone else's creative expressions." *Robert R. Jones*, 858 F.2d at 282. In contrast to *Robert R. Jones*, the Court's monetary award here is clearly *in*sufficient to deter Allegiance from exploiting Premier's "creative expressions"—namely, Premier's LPLP Certificates. Allegiance's corporate representative's deposition testimony demonstrates that, despite the Court finding Allegiance liable for copyright infringement, Allegiance has continued exploiting Premier's certificates.

*Shell* and *Murray*, both relied heavily upon in Allegiance's opposition, are materially distinguishable from the case at bar. The Court, however, recognizes that, just like the plaintiffs in *Shell* and *Murray*, Premier has not provided evidence that it would have received the profits Allegiance earned from administering Tricor's program (which uses Premier's certificate) had Allegiance not infringed on Premier's copyright. But this similarity is not decisive. Unlike *Shell* and *Murray*, this case involves a defendant that has continued to exploit the plaintiff's copyrighted work even after the court found in favor of the plaintiff's copyright claim. Thus, guided by the Copyright Act's purpose to "deter unauthorized exploitation of someone else's creative expression," *see Robert R. Jones*, 858 F.2d at 282, coupled with undisputed evidence that the Court's damages award based on Premier's lost profits was "insufficient to provide the sort of deterrent intended by Congress," *see Goldman*, 559 F. Supp. 2d at 865, the Court therefore finds

Premier entitled to prejudgment interest. Accordingly, the Court **GRANTS** Premier's Motion for Prejudgment Interest. (ECF No. 242.)

### III. PREMIER'S MOTION FOR PERMANENT INJUNCTION

Premier seeks a permanent injunction pursuant to 17 U.S.C. § 502. (Pl. Mot. Perm. Inj. at 3, ECF No. 243; *see also* 2d Am. Compl. at 16, ECF No. 46.) The Court has found that Allegiance infringed Premier's copyrights, thus the Court will consider whether a permanent injunction, in addition to the damages already awarded, is appropriate. *See Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 492 (6th Cir. 2007) (noting that the Copyright Act authorizes injunctive relief as a remedy for infringement); *Columbia Pictures Indus. v. T & F Enterprises*, 68 F. Supp. 2d 833, 841 (M.D. Mich. Oct. 25, 1999) (explaining that district courts have discretion to issue a permanent injunction under the Copyright Act).

#### A. Legal Standard

As stated by the Sixth Circuit, "[i]t is uncontroversial that a 'showing of past infringement and a substantial likelihood of future infringement' justifies issuance of a permanent injunction." *Bridgeport*, 507 F.3d at 492 (quoting MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 14.06[B] (2007)). Indeed, not only is a permanent injunction justified under such a scenario, but "[w]hen a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction." *Id.* (quoting *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990)). To assess the substantial likelihood of future copyright infringement, courts in this Circuit consider "the magnitude of the infringement, whether the infringer maintains possession of the infringing product, and whether the infringer can or has continued its infringing conduct even after the initiation of court proceedings." *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 773 (E.D. Mich. Dec. 15, 2014).

But the analysis does not end with a finding of a substantial likelihood of continuing infringement. The Supreme Court has indicated that a district court must analyze the four factors traditionally examined when issuing permanent injunctions in patent and copyright infringement cases. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392–93 (2006). Thus, a plaintiff seeking a permanent injunction must demonstrate:

> (1) that it has suffered an irreparable injury;
> (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
> (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391 (2006); *see also Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio May 18, 2007).

### B. Discussion

The Court begins by assessing the likelihood that Allegiance will continue infringing on Premier's copyright in the future. Premier has established that Allegiance "has continued its infringing conduct even after the initiation of court proceedings." *See Calibrated Success*, 72 F. Supp. 3d at 773. Following the Court's Order on summary judgment, Allegiance has continued to exploit the infringing use of Premier's certificate. (*See* Murphy Dep. at 67:19-24, ECF No. 191-1 (confirming that Allegiance has continued administering the copyrighted certificates after July 29, 2021).) Further, Allegiance's opposition brief suggests that, absent a permanent injunction, it will continue exploiting Premier's copyright. (*See* Opp'n Perm. Inj. at 7, ECF No. 246 (arguing that permitting Allegiance to continue administering the copyrighted program is necessary to ensure that registered consumers receive the benefits of the loyalty program).) The Court therefore finds that a substantial likelihood of future infringement exists.

Turning to the *eBay* factors, the Court will analyze the first two factors together: whether Allegiance's infringement of Premier's copyright was an irreparable injury and whether monetary damages are sufficient. Through Allegiance's infringement of Premier's certificate, Premier has lost the right to exclusive control of its copyright. "[T]hat Section 106 of the Copyright Act does not grant a copyright owner the exclusive right to 'use' a work is sophistry." *Stromback v. New Line Cinema*, 384 F.3d 283, 301 (6th Cir. 2004) (citing *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)). Although Premier has received damages to compensate it for the copying and past use, its future right to exclusive use cannot be restored without an injunction.

Allegiance argues that Premier did not suffer an irreparable injury and that adequate remedies are available at law. Beginning with Allegiance's argument that Premier did not suffer an irreparable injury at its hands, which requires Premier to show that Allegiance is likely to infringe Premier's copyrights in the future, *see Shell*, 2018 U.S. Dist. LEXIS 166573, at *18–19, Allegiance asserts that "Allegiance's copying of the Certificate occurred and ended four years ago." (Opp'n Perm. Inj. at 5, ECF No. 246.) Now, because Allegiance only serves as an administrator for Tricor's programs, "Premier has not shown any threat of future infringement by Allegiance." (*Id.*) The Court disagrees. Allegiance's unlawful conduct was not simply the copying of Premier's certificate, but also the *use* of the certificate. When the Court ordered the disgorgement of Allegiance's profits, the Court defined these profits as "the amount of profit Allegiance earned from *using* the LPLP Certificate." (ECF No. 241 at 3 (emphasis added).) Despite the Court finding Premier entitled to $441,239 based on Allegiance's use of Premier's certificate, Allegiance has continued to use the certificate in the same manner as before: as the administrator of Tricor's loyalty programs. The Copyright Act gives Premier the exclusive right to use its copyright, but such right is meaningless so long as Allegiance adheres to its current practices. The

9

Court thus finds that Allegiance's post-judgment use of Premier's certificate shows irreparable injury.

As to the second factor, Allegiance argues that the Court's award of $441,239 establishes that Premier has an adequate remedy at law, which precludes a permanent injunction. (Opp'n Perm. Inj. at 6, ECF No. 246.) The Court is not persuaded. The Sixth Circuit has explained that where there is potential for future harm from infringement, there is no adequate remedy at law. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). As discussed above, there is potential for future harm from infringement because Allegiance has continued its infringing activities even after the Court granted summary judgment in favor of Premier on its copyright infringement claim.

Moving to the balance of hardships, the Court finds a permanent injunction is warranted because there is no harm to Allegiance inasmuch as an injunction will merely require Allegiance to comply with the Copyright Act. *McGee*, 490 F. Supp. 2d at 883; *see also HarperCollins Publrs. LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 387 (S.D.N.Y. 2014) ("[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product.") (quoting *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2nd Cir. 2012)). In contrast, Premier faces the specter of having to bring a lawsuit for every future infringement. *See Buttnugget Publ'g v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 109 (N.D.N.Y Aug. 5, 2011) ("Requiring plaintiffs to commence litigation for each future violation would be an extreme hardship, while preventing defendants from continually infringing on plaintiffs' copyrighted material is not.").

Finally, it is in the public's interest to issue a permanent injunction. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections

10

and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *McGee*, 490 F. Supp. 2d at 883 (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983)). Allegiance, however, argues that this factor weighs in its favor. Specifically, Allegiance takes the position that a permanent injunction would harm consumers because it would prevent Allegiance "from serving its role of ensuring that the consumers who sign up for the loyalty programs receive the benefit of their bargains with Tricor." (Opp'n Perm. Inj. at 7, ECF No. 246.) But this argument mischaracterizes the extent of the proposed permanent injunction. Premier does not seek an order barring Allegiance from administering the certificates already issued; rather, Premier is asking the Court to enjoin Allegiance from administering any certificate or derivative of Premier's copyrighted work issued *after* the date of the Court's order. (*See* Proposed Order, ECF No. 243–1.) Thus, the final *eBay* factor also weighs in Premier's favor.

In sum, the Court finds that Premier is entitled to a permanent injunction; Premier's Motion for Permanent Injunction is **GRANTED**. (ECF No. 243.)

## IV. ATTORNEYS' FEES AND COSTS

Premier also seeks an award of reasonable attorneys' fees and costs. (ECF No. 248.) As discussed below, the Court finds that an award of reasonable attorneys' fees, but not costs, is appropriate in this case.

### A. Legal Standard

The Copyright Act provides for awards of attorneys' fees and costs:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Although an award of attorneys' fees and costs is not automatic, "[t]he grant of fees and costs 'is the rule rather than the exception and they should be awarded routinely.'" *Miller v. Hurst*, 2022 U.S. App. LEXIS 2494, *9 (6th Cir. 2022) (quoting *Balsley v. LFP, Inc.*, 691 F.3d 747, 773 (6th Cir. 2012). While "[t]here is no precise rule or formula" for determining whether an award of attorneys' fees and costs is proper, the Supreme Court has identified "several nonexclusive factors" that courts may consider so long as they do so "in an evenhanded manner . . . consistent with the primary purposes of the Copyright Act": "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 807–808 (6th Cir. 2005) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Because the list of factors is nonexclusive, "not every factor must weigh in favor of the prevailing party and other factors may be considered as well." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004).

### B. Attorneys' Fees

Premier argues that it is entitled to attorneys' fees because: (1) Allegiance's behavior throughout this litigation substantially—and unnecessarily—increased costs, (2) Allegiance asserted factually and legally unreasonable positions, and (3) an award of attorneys' fees is necessary to deter Allegiance from continuing to exploit Premier's copyrights.

Allegiance responds that Premier is not entitled to attorneys' fees because: (1) Allegiance did not willfully infringe Premier's copyright, (2) Allegiance did not take unreasonable

factual/legal positions in the litigation, and (3) because Allegiance has appealed the Court's summary judgment and damages opinions, it is premature to award attorneys' fees.[2]

### a. *Fogerty* factor: objective unreasonableness

Several of Premier's arguments justifying an award of attorneys' fees fall under the "objective unreasonableness" *Fogerty* factor. Premier asserts that Allegiance's decision to advance legally and factually "delusion[al]" positions warrant an award of attorneys' fees. (ECF No. 248 at 3.) First, Premier argues that Allegiance's corporate representative took a factually disingenuous position when testifying at the damages hearing. Specifically, Premier takes issue with Allegiance's corporate representative's insistence that the forms at issue belonged to Allegiance, even after the Court's summary judgment decision. The Court, however, has reviewed the transcripts from the hearing, and Allegiance's corporate representative, Dawn Murphy, simply took the position that the infringing forms were "Tricor-owned" or a "Tricor derivative." (ECF No. 256 at 291:16-25, 293:15-20.) The Court does not find Ms. Murphy's position to be so factually unreasonable as to warrant attorneys' fees.

Second, Premier argues that Allegiance assumed a legally unreasonable position when it ignored Sixth Circuit precedent concerning the infringer's burden in the context of disgorgement of profits. The Court agrees. In *Balsley*, the Sixth Circuit articulated the burden of proof on each

---

[2] In arguing that an attorneys' fee award is premature at this juncture, Allegiance cites to *McCaughey v. City of Blue Ash*, 2009 U.S. Dist. LEXIS 116546 (S.D. Ohio Nov. 25, 2009). There, after finding a stay appropriate under Fed. R. Civ. P. 62(d), which allows an appellant to obtain a stay upon the posting of a bond or by demonstrating that the appellant has the capacity to pay the judgment, the court reserved judgment on plaintiff's motion for attorneys' fees pending appeal. *McCaughey*, 2009 U.S. Dist. LEXIS 116546, at *3–6. The Court found a stay appropriate because, despite defendant's failure to file a supersedeas bond, the defendant provided evidence that it had sufficient assets to pay the judgment through its risk pool and its excess carrier, in addition to having already set the funds aside should plaintiff prevail on appeal. *Id.* at 4–5. This case has little in common with the present case. While both Allegiance and the defendant in *McCaughey* failed to file a bond, that is where the similarities end. Allegiance, unlike the *McCaughey* defendant, has failed to provide the Court with any evidence suggesting it deserves relief from Rule 62's bond requirement. Thus, the Court does not find it premature to award Premier its reasonable attorneys' fees.

party in proving profits, explaining that the copyright owner need only show that the infringer's gross revenue has a "reasonable relationship to the infringing activity." 691 F.3d at 769. Allegiance, however, asserted that a causal link was required—a position rejected in *Balsley*. *Id.* at 769 n.6 ("We emphasize that we do not impose the more stringent burden of proving a "causal connection" on copyright owners . . . ."). For example, Allegiance devoted over eight pages of its 15-page Post-Trial Brief in arguing that Premier failed to establish a "causal link" between Allegiance's profits and the "infringing language." (ECF No. 231 at 3–11.) Allegiance did this even after acknowledging that "Premier has the burden to prove any of Defendants' gross revenues that have a reasonable relationship to infringement of the LPLP Certificate . . . ." (*Id.* at 3 (citing *Balsley*, 691 F.3d at 796–70).) As stated in the Court's Order following the damages hearing, Allegiance's position was "inconsistent with Sixth Circuit law." (ECF No. 241 at 5.) Thus, the Court finds that Allegiance's disregard of Sixth Circuit precedent weighs in favor of awarding Premier its attorneys' fees.

Premier also criticizes Allegiance's good faith, or lack thereof, during negotiation proceedings in this matter. (ECF No. 248 at 3.) Specifically, Premier claims that Allegiance failed to negotiate in good faith following the Court's decision on summary judgment because Allegiance believed it had the right to contest Premier's authorship of the certificate. Given this unfounded belief, Allegiance unsuccessfully contested the Court's decision—twice—prompting the Court to state the following when denying Allegiance's motion for sanctions:

> The Court notes that this is the second time Defendants have challenged the Court's summary judgment ruling at a late hour. First, Defendants filed their motion for reconsideration six months after the Court's summary judgment ruling. Second, Defendants moved for sanctions on April 20, 2022 despite knowing as early as February 2022 of Plaintiff's allegedly sanctionable conduct.

14

(May 13, 2022, Order at 3, ECF No. 204.) According to Premier, Allegiance's refusal to accept the Court's summary judgment ruling inhibited Allegiance's ability to negotiate this matter in good faith. And in a similar vein, Premier asserts that Allegiance made trial necessary by offering only a third of its own calculation of profit attributed to its infringement of Premier's copyrighted work.

In response, Allegiance argues, without providing evidence, that Premier's contention concerning Allegiance's lack of good faith during negotiations "is provably false." (ECF No. 251 at 4.) Allegiance also disputes Premier's characterization of Allegiance's motion for sanctions as another request to reconsider the Court's summary judgment decision, arguing that Premier's position "is untrue as a matter of record." The Court disagrees. *As a matter of record*, Allegiance's motion for sanctions was "the second time Defendants have challenged the Court's summary judgment ruling at a late hour." (May 13, 2022, Order at 3, ECF No. 204.) The Court declines to decide whether or not Allegiance acted in good faith during the negotiations leading up to the damages hearing; however, the Court finds that Allegiance's "late hour" motions seeking reconsideration of the Court's summary judgment decision, coupled with Allegiance's blatant denial that its motion for sanctions sought to vacate the summary judgment ruling, was objectively unreasonable, leaving the Court inclined to issue Premier an award of attorneys' fees.

**b. *Fogerty* factor: deterrence**

The Copyright Act is intended to "encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty*, 510 U.S. at 524. "Attorney's fees may be awarded for reasons other than simply making the plaintiff whole, such as encouraging the assertion of colorable copyright claims and deterring infringement." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1230 (7th Cir. 1991); *see also Superhype Publ'g, Inc. v. Vasiliou*, 838 F. Supp. 1220, 1227 (S.D. Ohio 1993) ("Attorney's fees may be awarded in infringement actions

to make the party whole, but also, to encourage assertion of colorable copyright claims and to deter infringement.").

Here, the Court finds that attorneys' fees are appropriate in order to deter Allegiance from profiting further from its use of Premier's copyrighted work. Despite Allegiance's insistence that it was an innocent infringer, *see* ECF No. 251 at 2–4, the undisputed facts establish that Allegiance has continued profiting from Premier's copyrighted work. *See* discussion *supra* Sections II, III.B. By awarding Premier attorneys' fees, this Court promotes the Copyright Act's purpose to "deter unauthorized exploitation of someone else's creative expressions." *Robert R. Jones*, 858 F.2d at 282.

In sum, primarily for reasons of deterrence, and secondarily for Allegiance's occasionally objectively unreasonable litigation positions, the Court finds some award of attorneys' fees appropriate in this case.

### c. Reasonableness

While Premier is entitled to attorneys' fees, it is not automatically entitled to its actual attorneys' fees under the Copyright Act; rather, Premier is entitled to "a reasonable attorney's fee." 17 U.S.C. § 505.

The Court uses the "lodestar" method to determine the reasonableness of requests for attorneys' fees. *Music v. Fargo*, 2008 U.S. Dist. LEXIS 141635, *14 (S.D. Ohio Jan. 18, 2008); *see also Diamond Time*, 371 F.3d at 896 (approving of district court's application of lodestar method to attorneys' fees award in copyright case). Under this method, the Court determines the lodestar amount by multiplying the "hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "After calculating this amount, the court should consider the factors mentioned in *Fogerty* and review the documentation

relating to hours expended and the prevailing market rate for the work." *Ametex Fabrics v. Custom Interiors & Supply Co.*, 1998 U.S. App. LEXIS 20538, *8 (6th Cir. 1988). The court then considers whether any adjustments to the lodestar are appropriate. *Hensley*, 461 U.S. at 434–36.

### i. Lodestar amount

In order to calculate the lodestar amount, the Court will begin by determining the reasonableness of Premier's requested hourly rate. After making this determination, the Court will then calculate the appropriate number of hours worked.

### 1. Hourly rate

Premier's counsel requests the following hourly rates: $475 for its Columbus partner, $350 for its Kentucky partner, and $250-$295 for associates. (ECF No. 248 at 6.) Allegiance does not challenge the reasonableness of these rates.

In order to determine whether Premier's requested hourly rates are reasonable, the Court looks to the prevailing market rate. *Northcross v. Bd. of Educ.*, 611 F.2d 624, 638 (6th Cir. 1979). The Sixth Circuit defines "prevailing market rate" as the rate that "lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). "A district court is permitted to 'rely on a party's submissions, awards in an analogous case, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821–22 (6th Cir. 2013) (quoting *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir 2011)). Premier carries the burden to produce sufficient evidence that its requested hourly rates are congruent with those prevailing in the community for similar services. *See Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

Here, Premier's counsel contends that their rates are reasonable and consistent with the prevailing rates in the community for attorneys with similar qualifications and experience. (ECF No. 248 at 6; Thomas Decl. ¶ 5, ECF No. 248-1; Krabacher Decl. ¶ 5, ECF No. 248-2.) In carrying their burden, Premier's counsel cite to a number of cases from the Southern District awarding attorneys' fees at rates comparable to the requested rate. (ECF No. 248 at 6 n.2.)

The Court finds Premier's requested rates largely reasonable, as it is familiar with the hourly rates charged by lawyers in Columbus, Ohio and the high quality of work and skillful litigation performed by Premier's counsel. Moreover, the requested hourly rates fall within ranges previously deemed reasonable in this market. In *Liang v. AWG Remarketing, Inc.*, a case involving a copyright dispute over an automobile auction website, the Honorable Judge Frost approved partner hourly rates ranging from $320-$550 and associate hourly rates from $240-$295. 2016 U.S. Dist. LEXIS 13566, *37 (S.D. Ohio Feb. 4, 2016).

The Court will, however, reduce the hourly rates to properly reflect Premier's counsel's billing rates over the course of this multi-year litigation. A review of Mr. Krabacher's invoices demonstrates that in 2018, his hourly rate was $405, which increased to $430 in 2019, $450 in 2020, and then $465 in 2021 and 2022. (Krabacher Decl., ECF No. 248-2.) Associate billing rates similarly increased: in 2018, rates ranged from $200 to $235, increasing to $210-$265 in 2019, and then $225-$295 for the period between 2020 and 2022. (*Id.*) Thus, rather than issuing an attorneys' fees award based on Premier's counsel's more recently charged hourly rates, the Court will instead reduce the hourly rates, where appropriate, to match the rates that Premier's counsel actually charged—and Premier actually paid.

### 2.  Number of hours

The party seeking attorneys' fees has the burden of "documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. The party must submit evidence that enables the court to determine that such hours and hourly rates "were actually and reasonably expended" in the litigation. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984). "Where the documentation is inadequate, the court may reduce the award accordingly." *Brown v. Halsted Fin. Servs., LLC*, No. 3:12-CV-308, 2013 U.S. Dist. LEXIS 26144, *7 (S.D. Ohio Feb. 26, 2013).

In this case, Premier's counsel has provided invoices from their respective firms reflecting the work performed relating to the copyright infringement issues in this case. (ECF Nos. 248-1, 248-2.) Allegiance takes issue with these invoices, arguing that they make it impossible "to fully discern what portions of the overall entries were attributable to the Copyright claim." (ECF No. 251 at 9.) First, both declarations provide that the invoices relate specifically to the copyright infringement issues. (Thomas Decl. ¶ 2, ECF No. 248-1; Krabacher Decl. ¶ 2, ECF No. 248-2.) Second, the Court finds that the invoice entries are sufficiently detailed and of probative value that the Court has a high degree of certainty that the hours were actually and reasonably expended. Tellingly, Allegiance's opposition does not challenge any particular billing entry as documenting time unreasonably expended.

Allegiance does, however, make a general allegation that Premier's decision on the eve of trial to forego statutory damages, which was the only issue creating a question for the jury, resulted in a "huge increase in the cost of trial that . . . could have been avoided . . . ." (ECF No. 251 at 5.) The Court finds that Premier's decision does not warrant a reduction in the amount of hours Premier's counsel reasonably expended. Although Premier's decision undoubtedly increased

hours before trial, the decision almost certainly *reduced* the hours necessary for trial. While statutory damages were still in play, Allegiance had predicted a six-day trial defended by two lawyers; instead, they had one lawyer defend a two-day hearing. (Final Pretrial Order at 1-2, ECF No. 209.) Given the cost savings associated with the shortened hearing, the Court does not find it appropriate to subtract any hours from those Premier's counsel reasonably billed.

Turning to the invoices, the Court's independent review establishes that Premier was billed for approximately 1,794 hours of legal work related to the copyright infringement issues. (*See* Thomas Decl., ECF No. 248-1 (totaling approximately 1,034 hours); Krabacher Decl., ECF No. 248-2 (totaling approximately 760 hours).) Of these hours, roughly 1,552 hours were charged by partners and the remaining 242 belonged to associates. (*Id.*) Mr. Krabacher charged the following: 33.5 hours at rate of $405 in 2018, 13.25 hours at a rate of $430 in 2019, 4.75 hours at a rate of $450 in 2020, and 563.7 hours at a rate of $465 for 2021 and 2022. (Krabacher Decl., ECF No. 248-2.) Ms. McCurdy, a partner at Mr. Krabacher's current firm, billed 34.9 hours at a rate of $425 in 2022. (*Id.*) And Mr. Campbell, a partner at Mr. Krabacher's former law firm, billed .25 hours at a rate of $475 in 2020. As for Mr. Thomas's invoices, which do not clearly articulate his billing rate, the Court will apply the reasonable hourly rate of $350 to his 902.5 hours billed. (*See* Thomas Decl., ECF No. 248-1.) With these numbers in mind, the Court calculates the attorneys' fees arising from partner hours to be $614,349.25.

As for the associates, A. Grandjean billed 9.25 hours at an hourly rate of $235; S. Lehman billed 7 hours at a rate of $225 in 2018, 14.25 hours at a rate of $265 in 2019, 4 hours at a rate of $285 in 2020, and 17.5 hours at a rate of $295 in 2021; C. Miller billed 3 hours at a rate of $200 in 2018, 1 hour at a rate of $210 in 2019, and 10.5 hours at a rate of $230 thereafter; B. Mangiarelli billed 1.5 hours at a rate of $225; A. Parriman billed 3.75 hours at a rate of $265 in 2020 and 1

hour at a rate of $270 in 2021; C. Gordon billed 18.05 hours at a rate of $290 in 2021; G.M. Balian billed 1.4 hours at a rate of $275 in 2022; A. Baker Jones billed 13.9 hours at a rate of $225 in 2022; and C.T. Page McGinnis billed 3.2 hours at a rate of $260 in 2022. (Krabacher Decl., ECF No. 248-2.) The invoices for the associates at Mr. Thomas's firm do not identify their hourly rates. As such, the Court will apply an hourly rate of $240. *See Liang*, U.S. Dist. LEXIS 13566, *37 (finding an associate hourly rate of $240 appropriate in a copyright infringement action). The associates at Mr. Thomas's firm billed 131.45 hours. Thus, the attorneys' fees based on associate hours totals $59,780.75.

Next, the Court adds the partner fees and the associate fees together, which comes to a grand total of $674,130.00. This does not end the Court's analysis, however. Mr. Thomas's firm extended multiple credits to Premier throughout this litigation, and the Court will subtract these credits from the total fees. In reviewing the invoices from Mr. Thomas's firm, which does not itemize these credits, the Court finds that $32,201 of the $52,167.25 credits extended relate to the copyright portion of this case.[3] (*See* Thomas Decl., ECF No. 248-1.) Thus, the Court calculates Premier's attorneys' fees for the copyright issues to be $641,929.00.

### ii. Adjustment to lodestar

The product of reasonable hours multiplied by a reasonable rate "does not end the inquiry." *Liang*, 2016 U.S. Dist. LEXIS 13566 at *41*; see also Market Day Corp. v. Maas*, No. 1:05-cv-578, 2006 U.S. Dist. LEXIS 33375, at *10 (S.D. Ohio May 25, 2006) (noting that the lodestar amount may be adjusted for considerations including the results obtained, novelty and difficulty of questions presented, and the skill needed). Premier does not suggest reasons for the Court to adjust the lodestar amount.

---

[3] This reflects a 50% reduction to the credits extended prior to the Court's summary judgment decision, which accounts for credits extended for work unrelated to the copyright portion of this case.

In contrast to Premier, Allegiance argues that Premier's counsel's practice of "block billing" warrants a reduction to the lodestar amount. (ECF No. 251 at 9-10.) The Court disagrees. Caselaw from this District unequivocally permits "block billing"—*i.e.*, attorney time entries that describe the completion of more than one task. *See Armstrong v. Receivables Perf. Mgmt., LLC*, 2012 U.S. Dist. LEXIS 15564, *9 (S.D. Ohio, Feb. 8, 2012) (holding that "block-billed entries are not improper in the attorney fee context"); *Williamson v. Recovery Ltd. P'ship*, 2013 U.S. Dist. LEXIS 88962, *29–30 (S.D. Ohio June 25, 2013) (collecting cases and holding that "the use of block billing in and of itself is not improper in the attorney fee context"). The Court has reviewed the invoices, which have been adjusted to account only for the copyright issues, and Premier's counsel's declarations. The Court finds that it is able to ascertain the compensable work within the block billing.

But a reduction to the lodestar amount *is* warranted. In reviewing Premier's counsel's invoices, the Court observed that partners billed the overwhelming majority of time in this case. Of the total 1,794 hours billed, partners combined for 1,552 of those hours, or approximately 86.5% of the total number of hours. Associates, in contrast, billed a total of just 242 hours, or approximately 13.5% of the total number of hours. The Sixth Circuit has recognized that this type of "top-heavy" billing calls for an across-the-board reduction to the lodestar amount. *See, e.g.*, *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008) (affirming the district court's decision to reduce the lodestar amount by 25% "to account for top-heavy billing by partners for work that could have been performed by associates"). So, too, has the Southern District of Ohio. *See Liang*, 2016 U.S. Dist. LEXIS 13566 at *39 (reducing fee award by 10% in copyright case where partners billed 82% of the total number of hours billed). This case necessitated substantial hours for legal research, discovery, reviewing documents, and drafting briefs—tasks

that associates undoubtedly could have performed to an extent greater than what the invoices evidence. Accordingly, the Court reduces the fee award by 10% to account for the top-heavy billing reflected in the invoices. *See id.* at *40.

In sum, after factoring in the 10% reduction due to the imbalanced billing, the Court calculates the lodestar in this case to be $577,736.10 in attorneys' fees.

## C. Costs

Finally, the Court addresses Premier's request for reimbursement of its litigation costs. The Copyright Act permits the Court to "allow the recovery of full costs by or against any party." 17 U.S.C. § 505.

Premier seeks an award of costs in the amount of $7,280.89. (ECF No. 248 at 8.) These costs allegedly relate to the expenses Premier incurred in connection with depositions in this case. (*See* Ex. B to Thomas Decl., ECF No. 248-1.) Allegiance argues—and the Court agrees—that Premier has not sufficiently documented the expenses it seeks to recover. Premier simply attaches a chart to Mr. Thomas's declaration stating its fees incurred. Premier does not provide any invoices for these fees or any evidence substantiating the amount of these costs or that they were actually paid to third parties. The Court, cognizant that it "does not serve as a rubber stamp of the requested fees and costs," declines to award Premier its costs. *See Chicago Title Ins. Corp. v. Magnuson*, No. 2:03-CV-368, 2005 U.S. Dist. LEXIS 43884, *93 (S.D. Ohio Sept. 26, 2005), *rev'd in part on other grounds*, 487 F.3d 985 (6th Cir. 2007).

## V. PREMIER'S MOTION TO COMPEL PAYMENT OF EXPERT FEES

Premier asks this Court to issue an order compelling Allegiance to (1) reimburse Premier for its experts' fees and (2) pay the attorneys' fees Premier incurred in seeking this order. (ECF No. 257.) Allegiance opposes this motion, asserting that Premier's requested fees are unreasonable

and unsupported by adequate documentary evidence. (ECF No. 263.) In addition, Allegiance requests reimbursement of its own expert witness costs, which Allegiance asks the Court to offset with any expert fee award entered in favor of Premier. (*Id.*)

## A. Facts and Background

Allegiance sought and took the discovery depositions of Premier's two experts: Mr. Biagioli on December 14, 2021 and Mr. Bokhart on April 7 and April 12, 2022. (Mot. to Compel at 3, ECF No. 257.) Premier advanced payment of its expert fees, which included fees incurred in preparation for their respective depositions and time spent testifying at their depositions. (*Id.*)

On July 21, 2022, Premier's counsel emailed counsel for Allegiance with its demand for reimbursement. (*Id.*) Included in this email was a letter detailing the cost breakdown for each expert witness. (*Id.*) Mr. Biagioli's hourly rate was $465.00, and he testified at his deposition for seven hours and incurred 17 hours in preparation. (*Id.* at 4.) Thus, Premier requests $11,160.00 for the 24 total hours Mr. Biagioli billed. (*Id.*) As for Premier's other expert witness, Mr. Bokhart billed at an hourly rate of $725.00, and he incurred 14.5 total hours, divided equally between time spent preparing for his deposition and testifying at his deposition. (*Id.* at 8.) Premier requests $10,512.50 for Mr. Bokhart's expert fees. (*Id.*)

Between July 21, 2022 and the filing of its motion to compel, Premier reiterated its request for reimbursement on seven separate occasions. [4] (*Id.*) For example, on October 6, 2022, after inquiring with Allegiance's counsel as to the status of Premier's expert deposition costs, Premier's counsel represented its willingness to file the present motion should Allegiance fail to reimburse Premier's expert fees: "We'll file a motion on it if we have to but would prefer to avoid the

---

[4] Following Premier's initial request for reimbursement on July 21, 2022, Premier's counsel followed up with counsel for Allegiance on the following dates: September 6, 2022; October 6, 2022; October 12, 2022; October 18, 2022; October 24, 2022; October 31, 2022; and November 2, 2022. (*See* Ex. B, ECF No. 257-1.)

unnecessary imposition on the court and our respective clients." (Ex. B to Mot. to Compel, ECF No. 257-1.)

On November 3, 2022, a day after Premier's latest request for fees, Allegiance's counsel responded to Premier's counsel, stating "I sent a proposal to my client for approval on the expert deposition cost issue. It should be finalized and sent to you guys by no later than Monday with a proposed check attached." (Mot. to Compel at 10, ECF No. 257.) Neither Premier nor its counsel ever received the proposed check. (*Id.*)

Premier is not alone in its request for expert fees. Premier deposed two of Allegiance's expert witnesses, Mr. King and Mr. Terry, and therefore Allegiance also asks the Court to reduce any award to Premier for its expert fees by the reasonable amount of Allegiance's expert fees. Allegiance estimates that its expert fees amount to $5,950.00, which consists of Mr. King's hourly rate of $200.00 for approximately 7.25 hours of combined testimony and preparation and Mr. Terry's hourly rate of $250.00 for approximately 18 hours of combined testimony and preparation. (ECF No. 263 at 5.)

## B. Discussion

Premier's motion to compel requests an order from this Court compelling Allegiance to reimburse Premier for (1) Messrs. Biagioli and Bokhart's fees incurred in preparing for and testifying at their respective depositions and (2) Premier's attorneys' fees in preparing this motion. The Court will address each request in turn.

### a. Reimbursement of expert witness fees

Rule 26(b)(4)(E)(i) states that "[u]nless manifest injustice would result," a party must pay an expert a "reasonable fee" for a deposition. *Brunarski v. Miami Univ.*, 2017 U.S. Dist. LEXIS 25374, *2 (S.D. Ohio Feb. 23, 2017). This "reasonable fee" also includes time spent preparing for

the deposition. *See Kohn v. Glenmede Trust Co., N.A.*, 2019 U.S. Dist. LEXIS 223457, *7-10 (N.D. Ohio Dec. 31, 2019) (collecting cases and rejecting defendants' argument that reimbursement of expert fees is limited to only deposition time). While the court retains discretion to determine the reasonableness of an expert's fee, certain factors serve to guide the court when passing on this issue: (1) the expert's education, training and experience; (2) the prevailing rate for comparable experts; and (3) the nature and complexity of the information sought. *Burgess v. Fischer*, 283 F.R.D. 372, 373 (S.D. Ohio Mar. 27, 2012). "[T]he burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement[.]" *Brunarski*, 2017 U.S. Dist. LEXIS 25374, at *4. If Premier meets this burden, Allegiance may avoid paying the requested fees only if it shows that: (1) the expert fees are unreasonable or (2) requiring Allegiance to pay the fees would be manifestly unjust. *See Kohn*, 2019 U.S. Dist. LEXIS 223457, at *7.

Here, Allegiance asserts that Premier has failed to carry its burden with respect to the reasonableness of its requested fees because: "1) Mr. Bokhart's hourly rate is exorbitant, compared to average standards; 2) Mr. Biagioli's preparation time is far more than his deposition time; and 3) Premier failed to support the overall reasonableness of their expert fee requests." (ECF No. 263 at 3.)  The Court agrees in part.

First, Allegiance challenges Mr. Bokhart's hourly rate of $725.00 as being unreasonably high. To support this assertion, Allegiance attached to its opposition brief a 2021 survey by SEAK, Inc., indicating that an average expert witness hourly fee for case preparation is $422.16 and for depositions is $524. (ECF No. 263 at 3.) Given this data, Allegiance argues that Mr. Bokhart's rate should be lowered to reflect the SEAK survey's average rates. In response, Premier contends that the Court should give little weight to the survey given that "only 29 of the 1,096 experts surveyed were intellectual property specialists" like Mr. Bokhart. (Reply at 2, ECF No. 265.) The Court

agrees. Mr. Bokhart is a seasoned expert witness with more than 30 years of experience in intellectual property and business valuation. (*See* Bokhart Expert Rep., ECF No. 184-3.) Further, the scope of his assignment covered his evaluation of the opinions and damages calculations put forth by Allegiance's experts—a subject that the Court finds to be substantially complex. Given the undersigned's familiarity with expert witness fees in the Southern District of Ohio, coupled with Mr. Bokhart's extensive experience and the complexity of the information upon which he opined, the Court finds that his hourly rate of $725.00 is reasonable.

Second, Allegiance challenges the fees requested on behalf of Mr. Biagioli on the ground that his hours spent preparing for his deposition dwarfed the hours he spent testifying at his deposition. The record indicates that Mr. Biagioli spent 24 total hours preparing for and testifying at his deposition. (Mot. to Compel at 5, ECF No. 257.) Of those 24 hours, Mr. Biagioli devoted 17 hours to his preparation for the deposition, and seven hours for the deposition itself. (Ex. A to Mot. to Compel, ECF No. 257-1.) Allegiance thus argues that this "ratio of approximately 2.4 hours of preparation to 1 hour of deposition testimony . . . is unreasonable, especially given the fact the Mr. Biagioli's deposition was his first time testifying as an expert, which represents an improper attempt to shift Biagioli's learning curve from his client, Premier, onto Allegiance." (ECF No. 263 at 3.)

The Court agrees with Allegiance. In *Kohn*, the Northern District of Ohio observed that "it may be unreasonable to order a party to pay an opposition expert's fees for . . . preparation time far in excess of deposition time[.]" 2019 U.S. Dist. LEXIS 223457, at *10. In fleshing out what it means for an expert's preparation time to be "far in excess" of the expert's deposition time, the Northern District cited to *Script Sec. Solutions, LLC v. Amazon.com, Inc.*, where the Eastern District of Texas explained that "many courts have limited the recovery to preparation time that

does not exceed the amount of deposition time, and most have declined to require payment for preparation time when the ratio of preparation time to deposition time exceeds three to one." 2016 U.S. Dist. LEXIS 156034, *21 (E.D. Tex. Nov. 10, 2016) (collecting cases).

Here, the ratio of preparation time to deposition time is 2.4. Premier's briefing does not address why this ratio is appropriate in this case when "many courts" have reduced the recovery for preparation time that exceeds the duration of the deposition. *See id.* Premier has also failed to explain why it is reasonable for Premier to pass those hours attributable to Mr. Biagioli's inexperience on to Allegiance. Those extra hours required by a novice expert witness afford no benefit to the deposing party and thus do not fall within the rationale of Rule 26(b)(4)(E) for shifting the cost of the expert's time. *See id.* at *22–23. Accordingly, the Court will limit Mr. Biagioli's hours spent preparing for his deposition to match the time spent testifying at his deposition. Premier is therefore entitled to $6,510.00 in expert witness fees arising from Mr. Biagioli work in this case.[5]

Lastly, Allegiance argues that "Premier presented no evidence to support the reasonableness of Messrs. Bokhart and Biagioli's expert fees in its Motion for Costs." (ECF No. 263 at 4.) The Court largely disagrees, with the only exception being Premier's failure to justify 10 of Mr. Biagioli's hours spent preparing for his deposition). In moving for its expert witness fees, Premier submitted an affidavit from Mr. Krabacher and a letter from Mr. Bokhart. (*See* Exs. 1 and A to Mot. to Compel, ECF No. 257-1.) Mr. Krabacher's affidavit establishes the dates on which Allegiance deposed Premier's experts, the documents that each expert reviewed or relied upon in preparing their reports, and that Premier has paid in full the invoices for each expert's deposition preparation and testimony. (Ex. 1 to Mot. to Compel at ¶¶ 3-7, ECF No. 257-1.) Mr.

---

[5] $6,510.00 represents 14 hours at Mr. Biagioli's hourly rate of $465.00—a 1:1 ratio reflecting seven hours of preparation time and seven hours of deposition time.

Bokhart's letter sets forth each expert's hourly rate and time spent preparing for and testifying at his respective deposition. (*Id.*) The letter also details the activities involved in each expert's preparation for his deposition:

> My preparation time included reviewing the documents, legal filings, expert reports and deposition transcripts identified in my expert report, a review of the rebuttal expert report of Mr. Terry and a review of my deposition transcript from April 7 in preparation for the continuation of my deposition on April 12, 2022, and discussions with counsel.

> [. . .]

> Mr. Biagioli's preparation time included reviewing the documents, legal filings and deposition transcripts identified in his expert report, a review of the documents produced by the parties subsequent to the filing of his report, and discussions with counsel.

(*Id.*)

In addition, each expert report speaks to the expert's education, training, and experience. *See* Biagioli Expert Rep., ECF No. 181-1 (stating, *inter alia*, that Mr. Biagioli has 10 years of experience "in the analysis of damages and valuation issues in complex commercial litigation with an emphasis on matters involving intellectual property rights"); Bokhart Expert Rep., ECF No. 184-3 (detailing Mr. Bokhart's qualifications, noting that he has 30 years of experience in "intellectual property (IP) and business valuation"). And each report sheds light on the "nature and complexity of the information sought." *See Burgess*, 283 F.R.D. at 373; *see also* Biagioli Expert Rep., ECF No. 181-1 (identifying "Objective and Scope of Assignment"); Bokhart Expert Rep., ECF No. 184-3 (providing "Summary of Rebuttal Opinions"). These reports, in conjunction with Mr. Krabacher's affidavit and Mr. Bokhart's letter, adequately prove the reasonableness of Premier's requested expert fees; Accordingly, the Court finds that Premier has carried its burden and Allegiance has failed to establish that the requested expert fees are unreasonable (apart from the 10 excessive hours Mr. Biagioli spent preparing for his deposition).

In contrast to Premier's request for expert witness fees, Allegiance's own request illustrates the type of situation in which a party fails to carry its burden. In arguing that it is entitled to a reasonable expert fee, Allegiance states the following, without providing any additional documentation:

> Allegiance estimates that its expert fees amount to $5,950.00. This number is based on Mr. King's hourly rate of $200.00 per hour for approximately 7.25 hours of combined preparation and testimony; and, Mr. Terry's hourly rate of $250.00 per hour for approximately 18 hours of combined testimony and preparation.

(ECF No. 263 at 5.) Given the absence of *any* evidentiary support for its position, the Court finds that Allegiance has not met its burden to offset its expert fees with Premier's expert fees. As such, the Court will not reduce Premier's award of expert witness fees by those Allegiance claims.[6]

In sum, the Court finds that Allegiance is responsible for Premier's expert witness fees in the following amounts: with respect to Mr. Bokhart's fees, which consist of 7.25 hours of preparation time and 7.25 hours of deposition time at his hourly rate of $725.00, Premier is entitled to $10,512.50; as for Mr. Biagioli's fees, which consist of seven hours of preparation time and

---

[6] In the event that Allegiance is inclined to formally bring a motion compelling payment of its experts fees, the Court directs Allegiance's counsel to review Local Rule 37.1, which provides:

> Objections, motions, applications, and requests relating to discovery shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences. After extrajudicial means for the resolution of differences about discovery have been exhausted, in lieu of immediately filing a motion under Fed. R. Civ. P. 26 or 37, any party may first seek an informal telephone conference with the Judge assigned to supervise discovery in the case.

S.D. Ohio Civ. R. 37.1. Simply put, Allegiance should refrain from invoking this Court's authority until and unless the parties have "exhausted among themselves all extrajudicial means for resolving their differences." *Id.* And to the extent Allegiance may wish to litigate whether Premier complied with Local Rule 37.1 in bringing the instant motion, the Court directs Allegiance's counsel to Local Rule 1.1, which empowers judges in the Southern District to relax strict adherence to the Local Rules when appropriate. *See* S.D. Ohio Civ. R. 1.1 (stating that the Local Rules "govern practice and procedure . . . unless a Judge orders otherwise in a given case"); *see also Oro BRC4, LLC v. Silvertree Apts., Inc.*, 2022 U.S. Dist. LEXIS 48274, *11-12 (S.D. Ohio Mar. 18, 2022) (recognizing judge's authority under Local Rule 1.1 to relax condition-precedents to seeking sanctions set forth in Local Rule 37.1).

seven hours of deposition time at his hourly rate of $465.00, Premier is entitled to $6,510.00. This results in a total expert fee award of $17,022.50.

### b. Entitlement to attorneys' fees

In addition to seeking reimbursement of its expert witness fees, Premier also requests an order requiring Allegiance to pay the reasonable attorneys' fees Premier incurred in bringing its motion to compel, citing Federal Rule of Civil Procedure 37(a)(5)(A). (ECF No. 257 at 12.)

Rule 37 provides sanctions when a party fails to comply with certain enumerated discovery provisions. This Rule allows a party to ask the court to compel disclosure or discovery and order appropriate sanctions. Baked into this Rule is a good faith requirement, which requires a party seeking an order compelling disclosure or discovery to attach a certification that it has conferred in good faith with the noncomplying party in an effort to resolve the dispute without the court's intervention. Fed. R. Civ. P. 37(a)(1). Rule 37 further provides:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i)     the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii)    the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii)   other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

Notably absent from Rule 37, however, is any provision addressing the issue of sanctioning a party's noncompliance with Rule 26(b)(4)(E)(i)—that is, Rule 37 says nothing explicit regarding a court's authority to sanction a party that fails to "pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D)[.]" *See* Fed. R. Civ. P. 37.

Although neither this Court nor the Sixth Circuit have directly grappled with the interplay between Rules 37 and 26(b)(4)(E), the Court is not venturing into completely uncharted waters. In *New York v. Solvent Chem. Co.*, the Western District of New York held that Rule 37(a) "inherently provides authority for the imposition of sanctions" for a party's noncompliance with Rule 26(b)(4)(E)(i). 2002 U.S. Dist. LEXIS 18601, *35 (W.D.N.Y. Sep. 27, 2002). In reaching this conclusion, the court noted that the sanctions set forth in Rule 37 "are not exhaustive, and the Court may impose such sanctions as are just." *Id.* (quoting *Miltope Corp. v. Hartford Casualty Insurance Co.*, 163 F.R.D. 191 (S.D.N.Y. 1995)). The court then analyzed Rule 37's language and applied it to the facts before it:

> Rule 37(a)(2) allows a party to make a motion to compel discovery required by the Federal Rules. It specifies that such motions may be brought if a party fails to comply with Rule 26(a) or Rules 30, 31, 33, 34. Rule 37(a)(3) provides that "for purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." In this case, Recochem responded negatively to Solvent's initial inquiries regarding payment for Dr. Nauman's fees and costs, an obligation Recochem clearly had under the Federal Rules. Solvent brought a motion to compel to force the Recochem defendants to meet its discovery obligations. This court regards Recochem's negative response as a failure to comply with their discovery obligations under Rule 37(a).

*Id.* at *35–36. Thus, the court awarded the moving party its attorneys' fees. *Id.* at *38.

The Western District of New York is not alone in its interpretation of Rule 37. Indeed, the Western District of Louisiana held that "Rule 37(a) provides authority for the imposition of sanctions" for a party's failure to comply with Rule 26(b)(4)(E). *Williams v. M-I, LLC*, 2006 U.S. Dist. LEXIS 102352, *5 (W.D. La. Sep. 9, 2006) (citing *Solvent Chem. Co.*, 163 F.R.D. 474–75). So, too, have the Northern District of Georgia and the Northern District of Illinois. S*ee Dukes v. State*, 428 F. Supp. 2d 1298, 1337 (N.D. Ga. Mar. 30, 2006) (finding the obligation to pay expert fees "incidental to discovery and therefore within the purview of Fed. R. Civ. P. 37"); *Royal*

*Maccabees Life Ins. Co. v. Malachinski*, 2001 U.S. Dist. LEXIS 3362, *57 (N.D. Ill. Mar. 19, 2001) (noting that "a court may issue sanctions for failure to comply with Rule 26 under Rule 37(a)(3) and (4) and under its inherent powers, without a court order").

But not every court to have addressed this issue has reached the same conclusion. In *Payne Prop. Mgmt. v. City of Mt. Sterling*, Kentucky's Eastern District declined to award fees and costs under Rule 37:

> [The moving party] offers no authority indicating that attorneys' fees or costs are recoverable in these circumstances under Rule 37. This rule ostensibly includes provisions that account for expenses and fees associated with compelling compliance with certain aspects of discovery itself, but it does not provide for sanctions relating to a failure to pay for expert witness depositions under Rule 26(b)(4)(E).

2020 U.S. Dist. LEXIS 143779, *11 (E.D. Ky. Aug. 11, 2020).

After reviewing relevant decisions from other jurisdictions, the Court concludes that the greater body of caselaw appears to permit an award of reasonable attorneys' fees under Rule 37 when a party fails to pay expert witness fees as required by Rule 26(b)(4)(E). The Court, however, finds it unnecessary to take a position on this issue here. Instead, the Court will assume, without deciding, that attorneys' fees are permissible under Rule 37. But such an award of attorneys' fees is inappropriate in this case because Premier has failed to satisfy Fed. R. Civ. P. 37(a)(5)(A)(v)—that is, Allegiance's "nondisclosure, response, or objection was substantially justified."

The Court finds that Allegiance acted with substantial justification in waiting to make payments to Premier's experts for three reasons: First and foremost, the Court's earlier decision reducing Premier's requested expert witness fees for Mr. Biagioli establishes a certain degree of merit to Allegiance's conduct; second, Allegiance's counsel at all times acknowledged Allegiance's duty to pay Premier's reasonable expert fees; and third, there appears to be some ambiguity concerning when the relevant expert fees for depositions became due. The record

establishes that Premier's counsel issued its last request for its expert fees on November 2, 2022, to which Allegiance's counsel represented that Premier should receive a proposed check in the mail by November 7, 2022. Premier, however, never followed up with Allegiance regarding the proposed check, nor did Premier convey any kind of deadline to Allegiance concerning when Premier would seek the Court's intervention should Allegiance fail to pay Premier's expert fees. Therefore, the Court declines to award attorneys' fees to Premier in connection with its motion to compel.

## VI. CONCLUSION

For the reasons stated herein, it is **ORDERED and ADJUDGED** as follows:

- Premier's Motion for Prejudgment Interest is **GRANTED**. (ECF No. 242.) Consistent with 28 U.S.C. § 1961, Premier is entitled to prejudgment interest from June 1, 2018 through August 28, 2022.

- Premier's Motion for Permanent Injunction is **GRANTED**. (ECF No. 243.) Allegiance, its agents, representatives, officers, employees, and all those acting in concert therewith, are hereby **PERMANENTLY ENJOINED** from continued infringement of Premier's copyrighted Lifetime Loyalty Program Certificate, including without limitation providing administration or other services relating in any way to any such Certificate issued after the date of this Order. For avoidance of doubt, this Order bars Allegiance from administering any program based on a derivative of Premier's copyrighted work. Nothing in this Order, however, shall bar Allegiance from administering an infringing Lifetime Loyalty Program Certificate that was issued prior to the date of this Order.

- Premier's Motion for Attorney's Fees is **GRANTED** in the amount of $577,736.10. (ECF No. 248.)

- Premier's Motion to Compel Expert Fees and Attorneys' Fees is **GRANTED in part and DENIED in part**. (ECF No. 257.) Allegiance is ordered to reimburse Premier $10,512.50 for Mr. Bokhart's combined deposition and preparation time and $6,510.00 for Mr. Biagioli's combined deposition and preparation time. Premier is not entitled to its reasonable attorneys' fees incurred in connection with bringing its motion to compel.

- Allegiance's Motion to Stay Briefing on Premier's Motion for Expert Deposition Costs is **DENIED as moot**. (ECF No. 258.)

The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

**March 28, 2023**      **/s/ Edmund A. Sargus, Jr.**
**DATE**          **EDMUND A. SARGUS, JR.**
             **UNITED STATES DISTRICT JUDGE**